STATE

v.

Richard USENIA et al.

89–587–C.A.

Supreme Court of Rhode Island.

Nov. 18, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, William Ferland, Asst. Attys. Gen., for plaintiff.

Edward C. Clifton (Clifton & Associates), Scott A. Lutes, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendants' appeals from judgments of conviction in Superior Court of robbery following a jury trial. We affirm.

Around 7:30 o'clock on the evening of December 15, 1986, Cumberland police officer Paul Rocheleau observed a white Mercury Monarch traveling slowly through the parking lot of the Ann & Hope in the Valley Falls section of Cumberland. The officer noticed that the car had a rear Rhode Island license plate, No. ZF 280, but did not have a front license plate. The officer also observed that the operator of the car was a black male and that the passenger in the front seat may have been a black male as well. The back seat held one passenger, a white male with blonde spiked hair.

As the car continued to cruise the parking lot, the officer called in for a registration check on the car. The registration check revealed that the license plate the officer observed on the white Mercury belonged to a red Oldsmobile. The officer attempted to stop the vehicle but lost sight of it because of the heavy traffic.

A few moments later Officer Rocheleau was called to report to the scene of a purse snatching at Paul's Liquor Store which is located only one-half mile from the Ann & Hope in Cumberland. The victim of the purse snatching told the officer that she had been approached by a black male and a white male, the black male wearing a black cap and the white male having spiked hair. After the black male had reached into the victim's car and taken her pocketbook, the two perpetrators ran from the scene and fled in a white car.

Richard Dube (Dube), the victim in the instant case, was working at the Pizza Man Restaurant in Cumberland on the evening of December 15, 1986. This restaurant is located less than a mile from the Ann & Hope in Cumberland. At approximately 8:15 p.m. Dube saw three customers enter the restaurant. Two white males approached the counter and asked to see a menu. The white males were about five feet, seven inches tall and weighed around 140 pounds. They both wore black leather jackets. One wore a red T-shirt under the jacket and the other wore a white T-shirt under his jacket. Dube testified that the white males looked similar. The other customer, a black male, went into the seating area of the restaurant.

One of the white males asked Dube what size rolls the restaurant served. Dube went into the kitchen, got the rolls, and showed them to the customers. The two white males ordered eggplant grinders. As Dube looked down at the cash register to ring up the price of the sandwiches, he was struck in the head. He fell to his knees, and his glasses fell off. While on the ground Dube covered his head with his hands and was struck by a different object. This second blow hit his left index finger. Next Dube ran to the kitchen, intending to call the police. However, he saw one of the white men jump over the counter and reach for the cash register. Dube was able to discern a red T-shirt and a leather jacket on the white male even though he did not have his glasses on. Since he was frightened, Dube fled from the restaurant and called the police from a neighborhood bar called the Fillibuster Club.

Officer Rocheleau went to the Fillibuster Club and spoke with Dube before Dube was taken to the hospital. Dube told Officer Rocheleau that he had been robbed by two white males and one black male while he worked at the Pizza Man Restaurant. Officer Rocheleau, remembering the occupants of the vehicle he observed earlier in the evening in the Ann & Hope parking lot, asked Dube if the attackers could have been two black males and one white male. Dube replied "yes" before being transported to Pawtucket Memorial Hospital. At that point Rocheleau radioed headquarters to put out a broadcast for the white Mercury Monarch, license No. ZF 870, that he had observed earlier in the Ann & Hope parking lot.

Next Officer Rocheleau went to the Pizza Man Restaurant and observed the following: blood was on the floor of the restaurant and the telephone receiver was off the hook. The cash register was smashed and coins were spread about the floor. No money was left in the cash register. A rock lay on the floor behind the counter. Fingerprints were found on the cash register.

Meanwhile in Providence Officer Joseph Lennon of the Providence police department heard the radio broadcast concerning the white Mercury Monarch. A short time later Officer Lennon observed a car that fit the broadcast description and pulled the car over. The car contained five individuals, two black and three white, and a roll of pennies and a metal-tipped stick. The individuals were taken into custody by police. Later that evening Dube identified pictures of both Richard and Alexander Usenia as representing two of the individuals who had robbed him that evening.

The defendants, Richard and Alexander Usenia, both raise the first issue discussed in this opinion. The remaining issues are raised only by defendant Richard Usenia.

## I

First, Richard and Alexander Usenia assert that their arrest by Providence police was illegal because the officers lacked the required probable cause on which a warrantless arrest must be based.

The defendants argue that Officer Rocheleau's questioning of the victim, Richard Dube, immediately after the attack did not reveal any facts that would allow the officer to make a reasonable connection between the robbery at the Pizza Man Restaurant and the car that the officer had observed earlier that evening in the Ann & Hope parking lot. The defendants buttress this assertion by pointing out that when Dube was first questioned after the incident, he related that his attackers were two white men and one black man. This fact directly conflicts with Officer Rocheleau's observation that the car in the Ann & Hope parking lot contained one white man and two black men. The Usenias urge that Officer Rocheleau had no reason to suspect that the occupants of the white Mercury Monarch had been involved in illegal activity at the Pizza Man Restaurant. Therefore, Officer Rocheleau had no probable cause to issue a broadcast for the car and the subsequent arrest was illegal. Hence the identifications made pursuant to the arrest, according to defendants' argument, must be suppressed.

The state argues that ample facts were established at trial that would allow Rocheleau to find a sufficient relationship between the occupants of the car in the Ann & Hope parking lot and the individuals who robbed the Pizza Man Restaurant to establish probable cause. Thus, the state asserts, the identifications made after defendants' arrest were properly admitted at trial.

We have repeatedly defined probable cause to arrest as "consisting of those facts and circumstances within the police officer's knowledge at the moment of arrest and of which he had reasonably trustworthy information that would warrant a reasonably prudent person's believing that a crime has been committed and that the prospective arrestee had committed it." *State v. Travis*, 568 A.2d 316, 320, (R.I. 1990); *State v. Brennan*, 526 A.2d 483, 485 ((R.I.1987); *State v. Adams*, 481 A.2d 718, 728–29 (R.I.1984). The officer determines if probable cause exists by evaluating the "mosaic of facts and circumstances [that should] be viewed cumulatively 'as through the eyes of a reasonable and cautious police officer on the scene, guided by his or her experiences and training.'" *In re Armand*, 454 A.2d 1216, 1218 (R.I.1983) (quoting *In re John C.*, 425 A.2d 536, 538–39, *cert. denied*, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981)). These rules balance the individuals Fourth Amendment interest in being protected from arbitrary and oppressive interference by government officials with the state's interest in pursuing vigorous law enforcement.

In the case before us the Cumberland police officer did have probable cause to suspect that the occupants of the white Mercury Monarch had committed a crime. First, when Officer Rocheleau initially observed the white Mercury Monarch, it only had one license plate, a violation of Rhode Island law. *See* G.L.1956 (1982 Reenactment) § 31–3–18. Thus, Officer Rocheleau had probable cause in regard to the driver of that car based solely on the statutory violation. Second, and most significantly, Rocheleau was called to the scene of a purse snatching only moments after

observing the white Mercury in the parking lot. The purse snatching occurred at Paul's Liquor Store, which is only one-half mile from Ann & Hope. The victim in that incident reported that she had been approached by one black man with a black cap and a white man with spiked hair. The victim's husband also told police that he saw the two men drive off in a white car. Finally, after responding to the call from the Fillibuster Club, Dube informed Officer Rocheleau that he had been attacked by a black man and a white man with spiked hair.

Three different sources provided information that Officer Rocheleau could use to determine that he had probable cause to suspect that the occupants of the white Mercury Monarch had committed a crime. All the incidents occurred in the same area very close in time. Furthermore each involved at least one black man and a white man with spiked hair. Since Rocheleau had probable cause it then follows that officer Lennon had probable cause. "The arresting officer in the field is entitled to rely on the departmental knowledge that comes to him through official channels." *State v. Firth*, 418 A.2d 827, 829 (R.I.1980). Therefore, Lennon should have relied on Rocheleau's information and thus acted properly.

## II

The second issue that defendant Richard Usenia raised is whether the trial court erred when it refused to disqualify the prosecutor from serving as an attorney in the case. The defendant asserts that information obtained from discovery that was disclosed just prior to a pretrial hearing required the defense to be able to call the prosecuting attorney as a witness. Specifically defendant alleges that notes taken by the prosecuting attorney during an interview with Dube, the victim, revealed that initially Dube had not been able to identify defendant from photographs. The notes confirm that Dube was only able to identify defendant Richard Usenia after first identifying a picture of his brother, Alexander Usenia.

The defendant's argument on this issue is without merit. We note at the outset that the prosecuting attorney had no obligation to deliver his handwritten notes of his interview with Dube to defendant. Clearly, these notes were attorney-work product and thus protected from discovery. Rule 26(b)(2) of the Superior Court Rules of Civil Procedure provides that "[a] party shall not require a deponent to produce or submit for inspection any writing obtained or prepared by the adverse party * * * in anticipation of litigation and in preparation for trial * * *." The test to determine if a writing is work product is whether "in light of the nature of the document or tangible material and the facts of the case, the document can be said to have been prepared or obtained because of the prospect of litigation, by or for an adverse party * * *." *Cabral v. Arruda*, 556 A.2d 47, 49 (R.I.1989). In the present case the prosecuting attorney clearly interviewed the victim to obtain information for the upcoming trial. The notes concerning his identification of the witness were, therefore, protected from discovery.

The defendant argues that the testimony regarding the victim's uncertainty about who the robbers were requires the prosecuting attorney to be a witness at the trial. Rule 3.7 of Rule 47 of the Supreme Court Rules strictly prohibits a lawyer from being a witness at a trial in which the lawyer is an advocate. Rule 3.7(a) provides: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." The defendant also asserts that by quashing its subpoena the trial court deprived defendant of his "constitutional right to procure such witnesses and evidence as are necessary to permit a full defense to the offense charged * * *." *State v. Carillo*, 113 R.I. 32, 39, 317 A.2d 449, 454 (1974).

The defendant's argument is incorrect. The record reveals that the information provided in the amended discovery was merely a restatement of the identification given to Cumberland police near the time of the robbery. Thus the prosecuting attorney was not a necessary witness since

defendant could cross-examine the police officer to elicit the same testimony. Furthermore defendant's constitutional right to call witnesses was not violated because defendant had ample opportunity to cross-examine other witnesses on the identification issue. Therefore, the trial court was correct in refusing to disqualify the prosecuting attorney.

## III

The third issue that defendant Richard Usenia raises is that the trial court erred in denying his motion for a continuance. At a pretrial hearing on February 22, 1989, defense counsel asked for a continuance because counsel had been able to meet with defendant for only a little over one hour two days before the trial began. Defense counsel also argued that he needed time to analyze the amended discovery information. The trial court denied the motion for a continuance but did recess early to give counsel a two-and-one-half-hour noon recess to confer with defendant.

It is well established that a motion for a continuance rests with the sound discretion of the trial judge and that the judge's decision on such a motion will not be disturbed on appeal in an absence of abuse of discretion. *State v. Lanigan*, 528 A.2d 310, 316 (R.I.1987); *State v. Allan*, 433 A.2d 222, 225 (R.I.1981). This discretion can be described as "the option that a trial justice has in doing or not doing a thing that cannot be demanded by a litigant as an absolute right." *Allan*, 433 A.2d at 225.

■ Although defendant has an absolute right to adequate representation, *see* R.I. Const. art. 1, sec. 10; the court also must ensure that cases are processed in an orderly fashion. *See Allan*, 433 A.2d at 225. Counsel cannot be permitted to represent to the court that a defendant is ready for trial and then request a continuance because that defendant is not ready. Such activity would create havoc with the court's calendar and would be a waste of judicial resources.

■ In this case defendant has failed to show that the trial justice abused his discretion in denying the motion for a continuance. The fact is that Richard Usenia voluntarily absented himself from the state for an extended period before the trial. He was brought back to the state after having been arrested on a warrant that had been issued due to his failure to appear. The responsibility for any lack of time to prepare for trial rests squarely with defendant. Furthermore, by recessing early, the trial justice did allow defendant to have time to meet with his attorney to prepare the defense. We find that this was a "reasonable adjournment" that was necessary to allow defendant to effectuate his constitutional right to present a defense. *State v. Carillo*, 113 R.I. at 39–40, 317 A.2d at 454. We are unable to say that the denial of the motion for a continuance constituted an abuse of discretion.

## IV

The fourth issue that defendant Richard Usenia raises is whether comments made by the prosecutor during his opening statement were so prejudicial as to require granting a motion to pass. The defendant argues that the prosecutor's statements irreparably damaged defendant in the eyes of the jurors.

During the course of the opening statement, the prosecutor stated the following:
"At some point the two Usenias decided they were going to order something, and they conveyed that to Mr. Dube. Mr. Dube, who is at the cash register, was very close to him. Where he was— moved over to the cash register to ring in the order. And when he looked down to ring in the order, things changed. Things changed dramatically. Went from being normal to a situation similar to when sharks smell blood. These three individuals went through a frenzy as soon as Mr. Dube went near that register."

Defense counsel immediately objected, and the trial justice sustained the objection. The trial justice told the jury:
"Objection is well founded. Ladies and gentlemen, this is an opportunity for lawyers to give you an overview of what

they expect to be proved during the course of the trial. It's not time to argue the merits of the case. Mr. Murray, you will refrain from those comments about Sharks smelling blood. Out of bounds. * * * The jury will disregard them. They are stricken."

A short time later the prosecutor related to the jury the circumstances surrounding the arrest of defendants. The prosecutor stated:

"All five are arrested, taken to the police station, and the police search both the car and the individuals in the car. Incriminating evidence is found both inside the car and on the person of the people inside the car."

Again defense counsel immediately objected, and the court overruled the objection. At the end of the prosecutor's opening statement, defense counsel made a motion to pass the case.

The decision to pass a case rests with the sound discretion of the trial justice. *State v. Agin*, 535 A.2d 321, 324 (R.I.1988). When a motion to pass is made, the trial justice must assess the prejudicial impact of the statements. *State v. Brown*, 522 A.2d 208, 210 (R.I.1987). Nevertheless, a finding that prejudice occurred does not mean the motion to pass must be granted. If the trial justice determines that the prejudice can be cured, a timely and effective instruction must be given. *Id.; State v. Collazo*, 446 A.2d 1006, 1010 (R.I.1982).

Here the trial justice was of the opinion that the "sharks smelling blood" remark was impermissibly prejudicial, but he also said that "I don't think that comment * * * is such that it would inflame the jury to such a point they could not disregard it." The judge determined that the prejudicial impact of the statement could be ameliorated by an instruction. He then promptly gave a clear instruction to the jury that the statement was inappropriate and it was stricken. His response, in our opinion, adequately protected defendant's rights.

The judge also correctly overruled the objection to the statement about

incriminating evidence in the car. The prosecutor is entitled, during opening statements, to comment on evidence the prosecutor believed in good faith will be available and admissible. *See* ABA Standards for Criminal Justice, ch. 3, standard 3–5.5 (1979). The incriminating evidence mentioned was a metal-tipped stick and a roll of pennies from the Pizza Man Restaurant that were recovered in the car. The prosecutor was justified at that time in believing that these relevant items would be admitted into evidence. The prosecutor is entitled to tell the jury what he intends to prove. If the prosecution is unable to prove what has been promised, it will lose credibility with the jury and defendant will benefit. Therefore, the objection was properly overruled.

## V

The final issue defendant Richard Usenia raises on appeal concerns whether the trial justice erred in admitting evidence relating to finger and palm prints. A Cumberland police officer obtained latent prints from the crime scene. These prints were compared to known prints of defendants by Dennis Dailey (Dailey), a Bureau of Criminal Investigation detective with the Cumberland police department whom the judge qualified as an expert witness. Dailey found a positive match between a right palm print of Richard Usenia and a latent palm print found on the cash register at the Pizza Man Restaurant.

Dailey utilized a blowup of the inked palm print and one of the latent print in order to explain to the jury how he determined that the prints matched. The blowups, however, also revealed some dissimilarities between the two prints. Nevertheless, Dailey explained, the dissimilarities could be due to the way the palm was held during the inking process. The defendant moved to suppress the blowups.

Qualifying witnesses as experts is a matter that rests solely with the discretion of the trial court and will not be disturbed by this court absent a showing of abuse of discretion. *Leahey v. State*, 121

R.I. 200, 202, 397 A.2d 509, 510:(1979). In determining whether a witness is qualified, the trial justice considers evidence of a witness's education, training, employment, or prior experiences. *State v. Villani,* 491 A.2d 976, 979 (R.I.1985). In this case the record is full of evidence that demonstrates that Dailey could be qualified as an expert. This evidence includes course work in the area of criminal identification, five years' work experience with a teacher of criminal identification, and reading and research to keep abreast of changes in fingerprinting techniques.

Furthermore, Dailey's testimony regarding the finger and palm prints was relevant. Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." R.I. Rules of Evidence, Rule 401. The blowups of the finger and palm prints are relevant since information regarding the prints will help the jury decide whether the prints were a match. Moreover, Dailey is an expert and thus entitled by law to state how he arrived at his conclusion that the prints matched. *See id.* at Rule 703. The arguments of the defendant against this portion of the evidence go to the weight it should be given rather than its admissibility; therefore, the blowups of the finger and palm prints were properly admitted.

For all these reasons the defendants' appeals are denied and dismissed, the judgments of conviction are hereby affirmed, and the papers of the case are remanded to the Superior Court.