Octavio FRIAS and Joao Santos.

v.

Richard L. JURCZYK.

92–183–Appeal.

Supreme Court of Rhode Island.

Nov. 19, 1993.

**680**

Merrill J. Friedemann, Providence, for Frias.

James P. Howe, Annette Elseth, Lovett, Schrefin & Gallogly, Edward R. McCormick, III, Providence, for Santos.

Cheryl DiMeo, Law Offices of Kevin Cain, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter came before this court on September 28, 1993 pursuant to an order requiring the plaintiffs to appear and show cause why their appeal should not be summarily denied and dismissed. Octavio Frias (Frias) and Joao Santos (Santos) appeal from a Superior Court judgment on a jury verdict in favor of Richard L. Jurczyk (Jurczyk). After hearing the arguments of counsel and reviewing the memoranda that the parties submitted, this court concludes that cause has not been shown.

Early on the rainy morning of November 6, 1986, a gray, two-door 1978 Camaro and an eighteen-wheel tractor-trailer truck collided on Route 195 East in Providence. The parties' testimony regarding the facts of the accident diverged on various issues.

Santos, the driver of the car, testified that, at five o'clock that morning, he picked up his coworker Frias at Frias's house in Providence and entered Route 95 North from Allens Avenue. He then exited that highway to go onto Route 195 East. He testified that, because of the inclement weather, he was driving with care at about forty to forty-five miles per hour with both the headlights and the windshield wipers on. He further testified that, as he passed the first exit on Route 195 East, he was in the first lane on the right. After passing the exit, he noticed a truck in the breakdown lane, moving faster than he was. Frias warned Santos that the truck was about to hit the car, so Santos tried to move to the left, but the truck struck his car. After impact, Santos lost control of the car, which traveled about 100 feet and hit the left side of the "wall." The impact with this wall forced Santos's chest into the steering column, and he subsequently passed out.

Frias testified that, as the car entered onto Route 195, it ended up in the second lane from the right and continued in that lane. As the car passed the first exit, it was traveling at about forty-five miles per hour. The truck was traveling at about fifty to fifty-five miles per hour in the first lane from the right and "was swaying back and forth and was trying to pass us." The truck then struck the car, which did a full turn and hit the barrier dividing the highway. The car spun around again, and "bounced back" to the other side of the highway, at which point the truck hit it a second time.

The defendant, Jurczyk, presented a quite different account of the accident. He testified that he was driving in the right lane of Route 195 at approximately forty to forty-five miles per hour. Santos's car passed his truck, driving in the extreme left lane at about sixty to sixty-five miles per hour. At this point the vehicles were proceeding with a lane between them. Jurczyk testified that Santos lost control of his car, skidded into the "concrete median divider" on the left of the highway, and rolled backward across the lanes of travel. Jurczyk attempted to brake his vehicle to reach a controlled stop, but just past the Wickenden Street exit the driver's side door of Santos's car and his right front bumper "came into contact." The truck then "pushed" Santos's car about eighty feet down

the highway. Contrary to each plaintiff's testimony, Jurczyk testified that he did not strike Santos's car before it went out of control or at any time other than when the car ended up in his lane.

Santos filed a complaint against Jurczyk in the Superior Court, claiming that Jurczyk had been negligent in the operation of his motor vehicle. Frias filed a complaint against Santos and Jurczyk, alleging that both Santos and Jurczyk had been negligent in the operation of their respective motor vehicles. Upon Jurczyk's motion, the trial justice subsequently consolidated the two cases.

Frias's claim against Santos settled on the day of trial. The jury returned a verdict for Jurczyk on the remaining claims. Subsequently, the trial justice denied Jurczyk's motion for a directed verdict. He later denied Santos's and Frias's motions for new trial.

On appeal, Santos and Frias argue that errors on the part of the trial justice in three critical areas warrant reversal. They claim that the trial justice erred by (1) making a prejudicial remark and issuing an insufficient curative instruction, (2) admitting the testimony of an expert witness regarding accident reconstruction, and (3) instructing the jury inadequately on comparative negligence and refusing to instruct the jury regarding the last-clear-chance doctrine.

I

Santos and Frias first challenge a comment that the trial justice made and the subsequent curative instruction that he issued to the jury. Santos testified on cross-examination that his native language was Portuguese and that he felt more comfortable speaking Portuguese during the trial. He also testified that he spoke and understood some English. This was apparent to those in the courtroom during his testimony because he answered some questions without waiting for their translation by the interpreter. The following exchange took place when Jurczyk's attorney questioned Santos on cross-examination:

"DEFENDANT'S COUNSEL: Well, when I asked you how you got around the house on the walker or crutches, your answer was crutches. You didn't indicate that you dragged yourself around.

"WITNESS/PLAINTIFF SANTOS: I—

"SANTOS'S COUNSEL: Objection, Your Honor.

"THE COURT: Sustained. This is one of those examples of the witness understanding more English than he's willing to admit. You don't have to answer a question when I sustain it.

"WITNESS/PLAINTIFF SANTOS: Sorry, Your Honor."

Both plaintiffs moved for the trial justice to pass the case on the basis of his remark regarding Santos's ability to understand English and his willingness to admit to such ability. They argued that the remark could raise questions in the jurors' minds concerning Santos's credibility. Additionally, although Frias had not yet testified, his attorney was concerned about the impact that the remark might have on the jury's perception of Frias's use of an interpreter. The trial justice denied the motion to pass, but immediately issued a cautionary instruction that directed the jurors not to draw any inference "adverse to this witness because he exercises his right or any other witness who exercises a similar right to testify in a primary language." The trial justice's instruction also pointed out that "even if [the witness] speaks fluent English, he has an absolute right to testify in his primary language."

■ We have held that the decision to pass a case falls within "the sound discretion of the trial justice." *State v. Usenia,* 599 A.2d 1026, 1032 (R.I.1991) (citing *State v. Agin,* 535 A.2d 321, 324 (R.I.1988)). When a party moves to pass a case on the basis of a claim that a prejudicial remark was made, "the trial justice must assess the prejudicial impact of the statements." *Usenia,* 599 A.2d at 1032 (citing *State v. Brown,* 522 A.2d 208, 210 (R.I.1987)). The trial justice must examine the comment and determine whether it "so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence." *State v. James,* 557

A.2d 471, 473 (R.I.1989) (quoting *State v. Brown*, 522 A.2d at 211). If the trial justice does find that a remark has a prejudicial impact, however, he or she is not automatically required to grant the motion to pass. *Usenia*, 599 A.2d at 1032. If in the trial justice's view the prejudice can be cured, he or she must give a timely and effective instruction to the jury. *Id.* (citing *State v. Brown*, 522 A.2d at 210 and *State v. Collazo*, 446 A.2d 1006, 1010 (R.I.1982)). If the comments are "ineradicable or inexpiable," however, the trial justice must grant the motion to pass. *James*, 557 A.2d at 473.

The plaintiffs argue that the trial justice's comment was prejudicial, impugned Santos's credibility, and could not be cured by an instruction. They also assert that, if the impact of the comment could have been cured by an instruction, the trial justice's instruction was insufficient. The defendant contends that Santos had already admitted that he understood English and that the jurors would not be swayed in their assessment of Santos's credibility by a factually incorrect comment by the trial justice.

■ We conclude that, although the trial justice's remark was inappropriate, a jury composed of laypersons would not have been prejudiced by such a remark. *See State v. Howard*, 114 R.I. 731, 743, 339 A.2d 259, 265–66 (1975). Nor would the comment "so inflame[ ] the passions of the jury as to prevent their calm and dispassionate examination of the evidence." *James*, 557 A.2d at 473 (quoting *State v. Brown*, 522 A.2d at 211). The jurors already knew that Santos spoke and understood some English because they observed him answering some questions in English, before they were translated into Portuguese. Furthermore, on cross-examination, Santos clearly was willing to admit that he understood and spoke some English. The trial justice determined that his remark was not so prejudicial that it could not be cured by an instruction, and he promptly issued an effective charge. We agree that his remark was not incurable and find that the trial justice did not abuse his discretion in denying plaintiffs' motion to pass.

■ Additionally, plaintiffs argue that the trial justice's instruction should have included statements that the jurors are the sole triers of fact and the only ones to determine the credibility of witnesses or the weight of the evidence. This is indeed the rule if the trial justice comments on the evidence in his or her instructions to the jury. *See State v. Holland*, 122 R.I. 339, 347, 405 A.2d 1211, 1216 (1979). This rule does not apply in this case, however. The trial justice did not comment on the evidence but rather on Santos's ability to understand English and his willingness to admit to it. A party's ability or willingness to testify in a particular language is not evidence in an action arising out of a motor-vehicle accident.

It is important to distinguish this case from *State v. Deslovers*, 40 R.I. 89, 100 A. 64 (1917), which plaintiffs cite in support of their claim. In *Deslovers*, this court held, among other things, that a complimentary remark by the trial justice to a witness in a murder trial constituted reversible error. *See id.* at 116–17, 100 A. at 73–74. After the defendant's counsel had asked the trial justice to instruct the witness to answer responsively, the trial justice remarked, "I believe that the witness is trying to do the best she can." *Id.* 100 A. at 116, 100 A. at 73–74. The court noted that "[c]ourts have been very careful in eliminating any remarks by the trial judge the tendency of which would be to intimate to the jury his [or her] personal view, would amount to criticism of counsel, or be complimentary to a witness by way of expressing confidence in his or her credibility." *Id.* at 117, 100 A. at 74. In the instant case, the trial justice made an offhand remark that was factually incorrect and significantly less prejudicial.

## II

Santos and Frias also challenge the admission of the testimony of defendant's expert witness, Professor Marc Richman (Richman), an accident reconstructionist. They both had sought exclusion of the expert testimony by way of a motion in limine. Santos challenges the denial of the motion in limine. He also questions whether the determination of the cause of the accident was properly subject to expert testimony and whether allowing the

expert's opinion regarding causation was an error based on the expert's omission of certain facts in evidence. Frias appeals the denial of the motion in limine and claims that the testimony was not helpful to the jury. He also argues that the trial justice should have granted his motion to strike the testimony because the testimony failed to reach the required degree of scientific and professional certainty.

■ Rule 702 of the Rhode Island Rules of Evidence governs the admissibility of expert testimony. It provides that

"[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

The trial justice allowed Richman to testify despite plaintiffs' objections. Both before and after the adoption of the Rhode Island Rules of Evidence in 1987, this court has refused to disturb a trial justice's decision regarding the admissibility of expert testimony unless it finds that the justice abused his or her discretion. *See, e.g., State v. Morales,* 621 A.2d 1247, 1249 (R.I.1993); *State v. Capalbo,* 433 A.2d 242, 246–47 (R.I.1981). The facts of the accident were very much in dispute, and the testimony of the parties was inconsistent on various points. It was not an abuse of discretion to conclude that the jury would find it helpful to hear testimony regarding such issues as what happens when a 1978 Chevrolet Camaro spins, the effect of the drag factor of wet, worn asphalt, and how many spins it would take a Camaro to use up all its energy so that the car would come to a stop. Therefore, we find that the trial justice did not abuse his discretion in admitting Richman's testimony.

### III

Finally, plaintiffs claim that the trial justice erred in his instructions to the jury. They argue that the trial justice gave an inadequate instruction regarding comparative negligence and committed error in refusing to instruct the jury on the last-clear-chance doctrine.

■ The trial justice informed the jurors that they had a right to look at Santos's conduct in driving his car to determine whether he was negligent. He also explained to the jurors the interrogatories that they were to answer during their deliberations. The interrogatories concerned whether Jurczyk or Santos was guilty of any negligence and included the following:

"3. Assume total negligence to equal 100%. What percentage of negligence do you ascribe to:

RICHARD L. JURCZYK _____%

JOAO C. SANTOS _____%

100%"

Furthermore, after a sidebar conference at which counsel for plaintiffs objected to the lack of a specific charge on comparative negligence and the trial justice stated that he thought he had "covered negligence six ways from Sunday," the trial justice told the jury:

"[W]e have a comparative negligence law in Rhode Island. As to one of these plaintiffs, the doctrine of comparative negligence would apply. I then would reduce any award to that particular plaintiff by the amount of any comparative negligence you found the operator of the vehicle, if you find the operator of the vehicle was guilty of negligence."

We conclude that the trial justice committed no error in his instructions regarding comparative negligence. We find that his charge sufficed to instruct the jury about the rule of law regarding comparative negligence that had to be applied to the issues raised at trial. *See State v. Mastracchio,* 612 A.2d 698, 707 (R.I.1992).

Santos and Frias also challenge the trial justice's denial of their request for an instruction on the last-clear-chance doctrine.

"It is clear that in those cases where the occasion has arisen for a discussion of the limits of the doctrine the court has held it applicable only where the evidence disclosed that the plaintiff had negligently placed himself [or herself] or his [or her] property in a position of peril; that defen-

dant thereafter had become aware or in the exercise of due care ought to have become aware of plaintiff's peril and his [or her] lack of comprehension of it or apparent inability to extricate himself [or herself] from it; that the defendant if he [or she] had been in the exercise of due care had a reasonable opportunity thereafter to avoid injuring the plaintiff; and that defendant failed to exercise such care." *Fontaine v. Devonis,* 114 R.I. 541, 548–49, 336 A.2d 847, 853 (1975) (quoting *Piacitelli v. Saldin,* 94 R.I. 367, 373–74, 180 A.2d 821, 825 (1962)).

■ Under plaintiffs' theory of how the accident occurred, defendant's negligence caused the accident. Neither plaintiff has claimed that he negligently placed himself in a position of peril. Therefore, the last-clear-chance doctrine does not appear to be applicable to this case. *See Major v. Grieg,* 102 R.I. 379, 230 A.2d 846 (1967) (holding that trial justice's denial of the plaintiff's request for last-clear-chance instruction was not error because doctrine did not apply to facts of the case).

■ This court has often stated that "a trial justice need only instruct a jury regarding those rules of law that must be applied to the issues raised at the trial." *Mastracchio,* 612 A.2d at 707 (quoting *State v. Medeiros,* 535 A.2d 766, 772 (R.I.1987)). Moreover, the trial justice should not give a requested instruction if it is not supported by the evidence admitted at trial because such an instruction might mislead or confuse the jury. *Mastracchio,* 612 A.2d at 707. We conclude, therefore, that the trial justice correctly refused to instruct the jury on the last-clear-chance doctrine.

We note that Jurczyk cross-appealed the trial justice's denial of his motion for a directed verdict, which he made at the close of all the evidence. Because of our decision on the plaintiffs' appeal, however, we need not reach the merits of Jurczyk's cross-appeal.

The plaintiffs' appeal is therefore denied and dismissed, and the judgment of the Su-

perior Court is affirmed. The case is remanded to the Superior Court.

FAY, C.J., did not participate.