## STATE
### v.
### Franklin J. SOTO.
### No. 82–351–C.A.
Supreme Court of Rhode Island.
May 31, 1984.

Dennis J. Roberts II, Atty. Gen., Thomas M. Dickinson, Sp. Asst. Atty. Gen., Providence, for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Atty., Paula Rosin, Asst. Public Defender, for defendant.

## OPINION

SHEA, Justice.

Franklin Soto was convicted of second-degree murder in the death of Ricardo Gonzalez after a trial by jury in the Superior Court. On appeal, he challenges rulings by the trial justice on the scope of cross-examination and the denial of his motion for a new trial. We reverse and remand for a new trial.

On the night of October 3, 1980, defendant was with Guadalupe Sostre, Juan Rivera, and James Acevedo in the Prospect Heights section of the city of Pawtucket.

When they met Gonzalez standing in the street next to a car, defendant approached him to ask about getting a ride home. They got into an argument. Gonzalez grabbed defendant by the throat and started choking him. The defendant swung his arms and fists at Gonzalez. Sostre tried to separate the two men. Gonzalez jumped back and produced a knife that he was known to carry. Acevedo, who was standing nearby, handed defendant a knife. Gonzalez and defendant continued to fight with the knives for a few minutes. Both men received knife wounds.

Sostre told the police the morning after the incident that defendant had been trying to get away from Gonzalez by hitting Gonzalez with his hands. He said that defendant stabbed Gonzalez in self-defense while the two were engaged in a knife fight. He added to this statement later that afternoon.

Three days after the incident, however, Sostre gave the police a second statement refuting his earlier assertion that defendant had acted in self-defense. Sostre claimed in this second statement that defendant stabbed Gonzalez after Gonzalez had abandoned the fight by attempting to run away. He further claimed that defendant stabbed Gonzalez in the chest while Rivera held Gonzalez by the back of his jacket. In the second statement, Sostre asserted that it was at this point that Gonzalez was attempting to flee.

At trial, the state called Sostre as its first witness. His testimony on direct-examination was consistent with his second statement to the police. During cross-examination, defendant attempted to ask Sostre whether he had been threatened by Gonzalez's brothers after giving his initial statement to the police. The court sustained the state's objection to the question.

Later during cross-examination, defendant attempted to ask Sostre about Gonzalez's reputation for violence in the community. The trial justice sustained the state's objection to this question.

The jury returned a verdict of guilty of murder in the second degree. The defendant was sentenced to thirty-five years in prison. While defendant's appeal of his conviction was pending in this court, Sostre executed an affidavit in which he asserted that the testimony he had given at trial was false.[1] At the hearing on the new-trial motion based on this affidavit, Sostre testified that he had lied at trial when he said that defendant had stabbed Gonzalez after Gonzalez had abandoned the fight. He testified that defendant had acted in self-defense and that Gonzalez had never attempted to flee or abandon the fight. The trial justice denied the motion for a new trial, and defendant has appealed.

## I

The defendant asserts that the trial justice erred in prohibiting counsel from asking Sostre on cross-examination whether he had been threatened by members of Gonzalez's family. During a bench conference following the state's objection to this question, defense counsel pointed out that Sostre had given two inconsistent statements to the police. Counsel for defendant told the trial justice that he sought to inquire on cross-examination about Sostre's motives for changing his story. The trial justice sustained the state's objection and excluded the question about the alleged threats.

The fundamental right to cross-examination is guaranteed by both the Sixth Amendment to the Constitution of the United States and art. I, sec. 10, of the Rhode Island Constitution. *State v. Freeman*, 473 A.2d 1149 (R.I., 1984). One purpose of cross-examination, among others, is

---

1. Sostre stated in the affidavit that defendant had stabbed Gonzalez while the two were engaged in a knife fight. He said that he had changed his testimony because he had been threatened and physically assaulted by members of Gonzalez's family. On the basis of that affidavit, this court remanded the case to the Superior Court for a hearing on defendant's motion for a new trial.

to allow facts to be brought out that tend to discredit the witness by showing that his or her testimony in chief was untrue or biased. *Alford v. United States,* 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624, 627 (1931). It is axiomatic that the partiality, biases, and prejudices of a witness are subject to exploration at trial and are " 'always relevant as discrediting the witness and affecting the weight of his testimony.' " *State v. DeBarros,* R.I., 441 A.2d 549, 552 (1982) (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974)). Effective cross-examination in a criminal case is the principal means by which the credibility and truthfulness of the state's witnesses can be tested. *State v. Anthony,* R.I., 422 A.2d 921, 924 (1980). This right to effective cross-examination, in relevant areas, "may not be given or withheld at the discretion of the trial justice." *State v. DeBarros,* R.I., 441 A.2d at 552.

The purpose of defendant's question concerning threats that Sostre may have received from Gonzalez's family members was to place before the jury the issue of the witness's possible biases and motives. Sostre testified that he had changed his statement to the police because he wanted to give the police a "true statement." The defendant, however, was not permitted to inquire about this explanation with cross-examination that might demonstrate that Sostre may have had other reasons to change his story.

■ In sustaining the state's objection to the cross-examination of Sostre, the trial justice stated, "If you intend to produce evidence to corroborate that [the threats] I'll permit you to go forward." The trial justice, however, "may not properly require offers of proof with respect to inquiries made during cross-examination except in unusual and peculiar circumstances." *State v. DeBarros,* R.I., 441 A.2d at 551. It would appear, therefore, that it was error to limit defendant's cross-examination.

■ This error was rectified, however, because later, but not before the end of cross-examination, defendant was permitted to explore the issue with Sostre fully. The following colloquy occurred sometime after the trial justice's initial ruling on defendant's question:

"Q. Now I'll ask you one more time. Between October 4 and October 7 did Ricky's [Gonzalez] brothers come after you?

"THE STATE: Objection, your Honor.

"THE COURT: Overruled. You may answer.

"A. No.

"Q. They did not? They did not, is that what you're telling us?

"A. Yes, sir.

" * * *

"Q. And they knew that you were there on October 4 when their brother was killed, did they not?

"A. Yes, sir.

"Q. Because they talked to you about it afterwards, didn't they?

"THE STATE: Objection, your Honor, asked and answered.

"THE COURT: Objection is overruled. You may answer. Would you read the question.

"(Last question read by stenographer)

"A. They didn't talk to us about it after. They were just up tight, because they just knew we were all there and they didn't know the real, they didn't know the true story about what had happened. That's what they were all upset about."

The initial error—foreclosure of cross-examination of Sostre—was rendered harmless, therefore, by virtue of the full cross-examination ultimately permitted on this issue.

II

During cross-examination of Sostre, defendant attempted to elicit testimony regarding Gonzalez's reputation in the community for violence. The trial justice sustained the state's objection to this question.

On appeal, defendant asserts that Gonzalez's reputation for violence is highly relevant because the crucial issue for the jury in this case was whether defendant acted in self-defense. The state argues first that Gonzalez's reputation for violence was irrelevant and beyond the scope of direct examination; the state argues second that even if it were relevant and appropriate, the denial was harmless.

 Evidence probative of the victim's reputation for violence is highly relevant and admissible to show, among other things, that the victim was the aggressor in a case in which self-defense is raised. *State v. Tribble*, R.I., 428 A.2d 1079, 1082 (1981); *State v. Infantolino*, 116 R.I. 303, 313, 355 A.2d 722, 728 (1976). There can be no question that self-defense was at issue in this case—it appears to have been the sole factual determination that the jury was required to resolve. The defendant's right, therefore, to elicit evidence regarding Gonzalez's reputation for aggressive and violent behavior is beyond question.

 Further, Sostre appears to have been competent to testify to Gonzalez's reputation in the community. He testified that he had known Gonzalez for nine years, that he had known him as a resident of Prospect Heights where both men lived, and that he had spent time with Gonzalez's brothers. Gonzalez's family in fact lived only one house away from where Sostre resided. This evidence could form a sufficient foundation to establish Sostre's competence to testify about Gonzalez's reputation in the community.

The state next asserts that defendant's question was beyond the scope of direct examination and was therefore properly excluded.[2] This court most recently discussed the scope-of-direct rule in *State v.*

*Crowhurst*, R.I., 470 A.2d 1138, 1143 (1984), and stated that

"since the purpose of cross-examination is to impeach a witness's credibility, the general rule that confines the scope of cross-examination to facts brought out during direct examination is inapplicable when the questions are designed either to explain, *contradict, or discredit any testimony given by the witness on direct examination* or to test his accuracy, memory, veracity, or credibility." (Emphasis added.)

 On cross-examination defendant may conduct a full inquiry into the subject matter entered into on direct examination. The scope of a witness's direct testimony includes inferences, deductions, and conclusions that may be drawn therefrom. The clear thrust of Sostre's testimony on direct examination was that at the time of the fatal stabbing, defendant was the aggressor. His testimony asserted that defendant stabbed Gonzalez at a time when Gonzalez was attempting to flee. To contradict and discredit this testimony, defendant sought to establish on cross-examination that it was in fact Gonzalez who was, and continued to be, the aggressor. The question concerning Gonzalez's reputation in the community for violence therefore should have been allowed during Sostre's cross-examination in order to allow defendant to meet Sostre's assertion that defendant was the aggressor.

 Finally, the state argues that even if the trial justice improperly precluded the question concerning Gonzalez's reputation for violence, that error was harmless. We cannot agree. The entire case against defendant appears to have rested on whether Gonzalez attempted to abandon the fight or whether he in fact remained the aggressor, thereby establishing that defendant acted

---

**2.** The following exchange took place between defense counsel and Sostre on cross-examination:

"Q. Do you know a lot of people in the Heights that knew Mr. Gonzalez?
"A. Yes, sir.
"Q. Did they ever talk about him?

THE STATE: Objection, your Honor.
"THE COURT: Sustained.
"Q. What was his reputation for violence in the community?
"THE STATE: Objection, your Honor.
"THE COURT: Sustained."

**950**

in self-defense. Gonzalez's reputation for violent and aggressive behavior was crucial to defendant's establishing that he had acted in self-defense. Exclusion of this evidence can hardly be classified as harmless error beyond a reasonable doubt. This is certainly evidence that would have had an influence on the jury's determination of the issue of self-defense. *See State v. DiPrete*, R.I., 468 A.2d 262, 265 (1983).

We need not address the defendant's appeal from the denial of his motion for a new trial because our resolution of the repution-testimony issue is dispositive of this case.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.