STATE

v.

James E. TOOLE.

No. 93–538–C.A.

Supreme Court of Rhode Island.

April 28, 1994.

Aaron L. Weisman, Dept. of Atty. Gen., Providence, for plaintiff.

Richard K. Corley, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case came before the Supreme Court on the appeal of the defendant, James E. Toole (Toole), from a Superior Court conviction on three counts of first-degree sexual assault on a child under the age of thirteen and two counts of first-degree sexual assault by force and coercion. The trial justice imposed a sentence of life imprisonment for each of the five counts. These sentences were to run concurrently.

A grand jury indicted Toole in 1992 on these five counts of sexual penetration of his biological daughter, to whom we shall refer using the fictitious first name Donna. At trial Donna testified that the first sexual activity with her father occurred when she was approximately four years old, to the best of her recollection. On that occasion her father made her touch his penis, and he put his penis into her mouth. She testified that between January 1, 1982, and January 1, 1984, her father would put his penis into her mouth on an almost daily basis. At that time the Toole family lived in Pawtucket, and Toole was a Pawtucket police officer who worked at night. Since Donna's mother worked during the day, Toole took care of Donna and her brothers when they arrived home from school. Toole's after-school sexual activity included his attempts to insert his fingers inside Donna's vagina approximately every week during those years. He succeeded when she was eleven years old. In addition, he would attempt anal intercourse on her by laying her on her stomach, covering her nose and mouth, and trying to insert his penis into her anus. During these attempts, Donna testified, she could not breathe. He succeeded approximately twice when she was about ten years old and continued such attempts occasionally. When Donna was twelve, Toole began inserting his penis into her vagina on an almost daily basis after school. Such sexual activity continued when the family moved to Coventry. The last sexual act between Donna and her father took place in June of 1989, when she was seventeen-and-a-half years old.

Donna testified that she "didn't like it the whole time he ever did anything to me. I always said I didn't like it, and I didn't think it was right. But he said it was okay because we loved each other, and it was okay." She also stated that she did not ever want to have sex with her father and that she had told him so. She tried to push him off her, but when she was twelve she was about four feet tall and her father was about five feet eight inches tall and "pretty strong." She stated that "[h]e would just continue." She testified that every time he tried to have sexual intercourse with her, she fought "as much as [she] could, but [she] didn't really think [she] really had a choice."

Donna also testified that Toole always instructed her not to tell anyone and warned that telling would break up the family. The first person whom Donna told about this sexual activity was her mother in May 1990. Soon afterward, she told her boyfriend and moved out of her parents' house and into an apartment in Coventry. A couple of days after she changed residences, her father called her. He apologized for what he had done and told her not to tell the chief of police.

In the spring of 1991 Donna spoke with a counselor at Rhode Island College, where she was enrolled. The counselor referred Donna to the rape crisis center, where she started going on a regular basis. Around Christmas of 1991, she told two of her brothers, James and Steven, about her father. In January she reported her father to the State Police.

Donna's mother, Yuen Toole, testified that she had been married to Toole for about twenty years. She stated that approximately a week after her conversation with Donna in May 1990, she confronted Toole with Donna's claims of his abuse. He initially denied having abused Donna, she testified, and she challenged him to explain why his daughter would fabricate such claims. A couple of minutes later he admitted having done so but not "that many times." She then informed Donna that she had confronted Toole. She testified that Toole then tried to apologize, and Donna suggested that she move out of the house. After Donna's move, her mother had Toole sleep in Donna's room and had Donna's two youngest siblings, who were still babies, sleep in her bedroom.

Donna's brother James Toole (James), who was eighteen years old at the time of trial, testified that one day he returned home from football practice and heard Donna yelling. She then ran out of a room, and Toole followed her into the kitchen. Toole softly said he was sorry and kept repeating his apology. Donna responded by telling Toole something like he always apologized but it still happened. James testified that after Donna had told him about her claims, he asked Toole why he had not sought help. Toole replied that James did not know "the whole story[.]" James also stated that Toole subsequently requested that he try to stop Donna from pursuing her allegations.

Donna's brother Steven Toole (Steven), who was seventeen at the time of trial, testified that when Donna informed him of her allegations against her father, he recalled certain incidents from his childhood. He stated that he remembered when Donna would be in their parents' room crying and screaming, "I hate it when you do that." Toole would apologize for whatever he was doing. This occurred more than once when the family lived in Pawtucket, he stated. He also testified that after Donna left the house, his father moved into her room. Steven was told that the reason for the bedroom switch was to prevent his father from awakening the baby when he arrived home. He further testified that he and his father discussed Donna's allegations. His father stated that

"he was sick, and that he[ ] [was] sorry for what he[ ] [had] done to [Donna]."

Toole did not testify and presented no witnesses. He raises several issues in his appeal. He claims that the trial justice erroneously permitted Donna to testify regarding "remote uncharged sexual crimes committed upon her by" him. Toole also contends that the prosecutor (1) "improperly embarked on a course of conduct intended to vouch for the truthfulness of [the state's] witnesses" and (2) improperly introduced evidence that Toole had been imprisoned at the Adult Correctional Institutions (ACI). He asserts that the trial justice erred by (1) not granting his motion to pass the case on the basis of prejudicial remarks in the prosecutor's closing argument, (2) permitting the prosecutor to lead Donna in her testimony without any showing that she was unable to testify through proper direct examination, and (3) unduly restricting his cross-examination of Donna.

■ With respect to the first issue, Toole asserts that the first evidence that was admitted concerning his criminal conduct related to uncharged sexual offenses committed seven to eleven years prior to the date of the offenses charged in the indictment. He claims that the trial justice failed to perform a balancing test in determining the admissibility of this "404(b) evidence." He also argues that none of the safety requirements set forth in *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978), was utilized, including a cautionary instruction.

The state claims that the trial justice's failure to give a limiting instruction was not prejudicial to Toole, as evidenced by his own counsel's conduct, and that it was harmless beyond a reasonable doubt. It asserts that the evidence was properly admitted under Rule 404(b) of the Rhode Island Rules of Evidence. The state also maintains that defense counsel did not object to the question regarding Donna's first memory of sexual activity between her and her father or to her answer that she was four years old at the time. The state points out that defense counsel also did not request a motion in limine or a limiting instruction with respect to this evidence. The state contends that

although the prosecutor questioned Donna only once concerning "these early assaults," defense counsel questioned her repeatedly about them, asked her mother whether Donna had complained to her when Donna was four, and alluded to this evidence in his closing argument. The state also argues that defense counsel did not believe that this evidence of past acts was prejudicial enough to request a limiting instruction and that he himself used this evidence to undermine the evidence of the charged conduct. The state emphasizes that in the trial justice's charge he enumerated the dates relative to each offense charged in the indictment and that the verdict form clearly stated the charged periods.

In order to address these arguments, we must first review certain aspects of the record. Donna was born in December 1971, and the indictment charged Toole with certain crimes beginning in 1982. The testimony that defendant apparently challenges most strongly unfolded near the beginning of Donna's testimony on direct examination. After the prosecutor asked and Donna answered questions regarding her age, occupation, the names and ages of her family members, and her various residences over the years, he inquired whether Toole was present in the courtroom. Donna identified her father and then the following exchange took place:

"Q[:] [Donna,] what is your first memory of sexual activity between you and your father?

"A[:] I was around four years old and living in Providence. And I'm not sure if that was the first time, but that is the first time I remember. And do you want me to—

"Q[:] What did he make you do? What happened?

"[DEFENSE COUNSEL]: Objection. Remoteness.

"THE COURT: Overruled.

"A[:] My father made me touch his penis, and he also put his penis in my mouth.

"Q[:] And did that type of activity continue after you were four years of age?

"A[:] Yes.

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled. You may answer.

"A[:] Yes, it did."

During defense counsel's cross-examination of Donna, he asked her to confirm that her testimony was that she recalled some "unwanted sexual activity" starting when she was four. Defense counsel also posed numerous questions to Donna regarding her memory of that first incident, including details regarding where it took place, where her mother was at the time, and whether she told her mother about what had happened when she was four or at any other time. When eliciting information regarding the frequency of this "unwanted" sexual behavior, he asked Donna, "Every day, three hundred fifty-two days a year for seventeen and a half years or, let's say fourteen years from the time you were four until the time you were seventeen and a half?" He also alluded to this evidence numerous times during his closing argument, mostly in an apparent attempt to challenge the credibility of her assertion that she told no one when she was four or at any other time for about thirteen years regarding the "unwanted sexual acts."

Rule 404(b) renders inadmissible evidence of other crimes, acts, or wrongs "to prove the character of a person in order to show that the person acted in conformity therewith." This rule further provides that such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable." We have also upheld the admission of evidence of "prior bad acts" when those acts are "interwoven" with the charged offense in such a manner that tends to establish guilty knowledge, motive, intent, or the like. *See State v. Chartier*, 619 A.2d 1119, 1122–23 (R.I.1993); *State v. Woodson*, 551 A.2d 1187, 1193–94 (R.I. 1988).

Prior to this state's adoption of the Rhode Island Rules of Evidence in 1987, we had held that "evidence of other not too remote" sexual crimes with the person involved in the crime being tried may be introduced to show the "'lewd disposition or * * * intent'" of

the defendant towards that person. *See Jalette*, 119 R.I. at 627, 382 A.2d at 533. We also held that in certain narrowly defined circumstances, evidence that the defendant committed nonremote similar sexual crimes with persons other than the victim may be admissible to prove the traditional exceptions to the rule, such as motive or intent. *See id.* We admonished, however, that the prosecution should use such evidence sparingly and only if "reasonably necessary." *See id.* We stated that evidence of other crimes pursuant to one of the exceptions to the general prohibition is admissible only when the exception is relevant to proving the charge against the defendant. *See id.* This court recently confirmed the vitality of the general rules that we enunciated in *Jalette* in *State v. Tobin*, 602 A.2d 528 (R.I.1992), and several other cases. *See, e.g., State v. Glover*, 614 A.2d 784, 785 (R.I.1992) (per curiam).

In *Tobin* we noted the existence of an "almost universally recognized" exception to Rule 404(b) for the admission of evidence of uncharged sexual misconduct to show "lustful disposition or sexual propensity" in cases concerning the proof of prior incestuous relations between the defendant and the complainant. *See Tobin*, 602 A.2d at 532 (quoting *Getz v. State*, 538 A.2d 726, 732 (Del. 1988)); *see also Woodson*, 551 A.2d at 1193–94 (upholding the admission of testimony regarding uncharged sexual assaults on the same victim when reasonably necessary to establish defendant's lewd disposition or intent and adequate safety measures had been taken). We also discussed the safeguards and the cautious approach that trial justices should take when presented with such evidence. *See Tobin*, 602 A.2d at 532; *see also State v. Brigham*, 638 A.2d 1043, 1046 (R.I. 1994).

We think that the evidence in this case clearly fits the exception for uncharged sexual misconduct to show "lustful disposition or sexual propensity" pertinent to proof of prior incestuous relations. The acts were also interwoven with the charged acts. We therefore conclude that its admission was not error.

We note that this court has gone further than this in admitting such evidence. For example, relying in part on *Tobin*, we have concluded that it was within the discretion of the trial justice to admit a physician's testimony regarding anal penetration of a victim by the defendant although the indictment and bill of particulars had alleged digital and penile penetration of the victim's vagina. *See State v. Brown*, 626 A.2d 228, 229, 231–34 (R.I.1993).

As discussed above, we have admonished that even when such evidence is admitted under an exception to Rule 404(b), a trial justice should receive it with " 'great caution' " and should specifically instruct the jury regarding its " 'limited purpose.' " *See State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993). We have also stated that the trial justice should take it upon himself or herself to offer a limiting instruction when admitting evidence of other sexual acts despite the general principle enunciated in Rule 105 of the Rhode Island Rules of Evidence that a limiting instruction is to be given upon request. *See Brown*, 626 A.2d at 234 n. 2. We made this pronouncement in the context of concluding that the defendant's failure to request such an instruction did not constitute waiver of the issue on appeal. *See id.*

■ The record does not reflect that Toole requested a limiting instruction (or filed a motion in limine) with respect to the evidence he challenges. Although this does not constitute waiver of the issue, we must point out that defense counsel utilized and referred to the evidence that Toole calls objectionable numerous times. He tried to use Donna's testimony regarding uncharged offenses to discredit her on cross-examination, to call into question why a girl of four would not tell her mother about the heinous sexual abuse that she claimed her father had perpetrated. In his closing argument he attempted to achieve the same goal, to challenge the credibility of Donna's assertion that at four years of age she did not tell her mother of her father's unwelcome sexual contact. Surely defense counsel did not wish to prejudice his own client at trial. The state asked the question concerning Donna's first memory of sexual activity as background to her testimony with regard to the charged crimes. Defense counsel did not object to the initial

query but did object to the second one eliciting the specific description. It is significant that the jury received clear oral instructions from the trial justice and written instructions on the verdict form regarding the dates of the charged offenses. We are persuaded by numerous factors that the trial justice committed no error with respect to this evidence.

■ The defendant next argues that the prosecutor improperly questioned witnesses to vouch for their truthfulness and attested to their truthfulness in his closing argument. He asserts that this "prosecutorial misconduct" was unduly prejudicial and warranted a mistrial, which he requested after the prosecutor's closing argument.

The state counters that defendant did not preserve this issue for review and has therefore waived his right to argue it on appeal. It also asserts that if the issue had been preserved, there was no error. Finally, the state maintains that even if defendant had preserved the issue and the prosecutor had "vouched," given the overwhelming evidence of his guilt, any such error would have been harmless beyond a reasonable doubt.

The defendant enumerates several instances of alleged "vouching." The first claimed vouching took place during the prosecutor's redirect examination of Donna's brother Steven, after defense counsel's cross-examination. The questioning and testimony on cross-examination unfolded as follows:

"Q[:] When [Donna] left the house your father moved into her room?

"A[:] Yes, sir; he did.

"Q[:] Didn't that really have something to do with the fact that the younger child was sleeping with your mother, and when he came home they didn't want the young baby woken up?

"THE COURT: Can't hear the answer.

"A[:] That was what was said to me—told to me, that is the reason.

"THE COURT: Who told you that?

"THE WITNESS: Both my father and my mother.

"Q[:] There was no other reason for him moving into [Donna's] room, was there, that you know of?

"A[:] That I knew of? No, I didn't.

"[DEFENSE COUNSEL]: Thank you."

The following exchange then took place between the prosecutor and Steven during redirect examination by the prosecutor:

"Q[:] Did your mother later tell you the real reason?

"A[:] My mother—

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"A[:] My mother later tell me the real reason?

"Q[:] Yes?

"A[:] She told me after [Donna] told me.

"Q[:] She told you after [Donna] told you?

"A[:] After.

"Q[:] What did she tell you the real reason was?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled."

Steven did answer that final question but the answer was stricken at defense counsel's request.

With regard to this particular alleged instance of vouching, Toole argues that the prosecutor's questioning Steven about "the real reason" implied that the prosecutor knew something that the jury did not, that is, that he had special knowledge regarding the "actual facts" of the case. This type of vouching is not permissible, he asserts.

■ The state claims that defense counsel asserted only a general objection and that, therefore, defendant cannot argue on appeal that the prosecutor vouched for Steven. The state also contends that the question did not amount to vouching because the use of the word "real" would not have reasonably led the jurors to believe that other evidence existed that only the prosecutor knew. The state points out that the trial justice struck the answer to the query.

According to our well-settled "raise or waive" rule, issues that were not preserved by a specific objection at trial, "sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal." *See State v. War-*

*ren,* 624 A.2d 841, 842 (R.I.1993); *see also State v. Long,* 488 A.2d 427, 432 (R.I.1985). It is also a basic rule of appellate practice that this court will not review objections that were not raised at trial. *State v. Burke,* 529 A.2d 621, 627 (R.I.1987). Consequently, allegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level. *See id.*

■ The objection that defense counsel asserted at trial was, as the state correctly argues, a general rather than a specific objection. We therefore conclude that it is not sufficiently specific or focused for us to review this contention in this particular instance.

Even if the objection had sufficiently preserved this vouching issue for our review, however, defendant's argument would be unavailing. We have stated that it is not proper for the prosecution to vouch for or attempt to bolster a government witness's credibility. *See State v. Chakouian,* 537 A.2d 409, 412 (R.I.1988). This court has explained vouching as occurring when the government states or insinuates that it possesses " 'special knowledge' " that its witness is testifying truthfully or if the prosecution " 'place[s] the prestige of the government behind the witness * * *.' " *See id.*

The prosecutor did not state or insinuate that he possessed "special knowledge" that Steven was testifying truthfully. If anything, he clarified the testimony that defense counsel elicited. Steven testified that he was given a certain explanation for his father's bedroom switch, implying at least the possibility of another reason, which possibility or reason he did not state. On redirect examination, the prosecutor inquired about that reason. Additionally, after the trial justice overruled defense counsel's objection to the prosecutor's second question regarding the "real reason," the trial justice ordered the resulting response stricken from the record at defense counsel's request. Therefore, we conclude that this conduct did not constitute vouching on the part of the prosecutor.

■ Toole raises five additional instances of alleged vouching: another instance during Steven's testimony on redirect examination and four times during the prosecutor's closing argument. Defense counsel failed to register any objection at any of these times. We are therefore precluded from reviewing these claims. *See Warren,* 624 A.2d at 842; *Burke,* 529 A.2d at 627.

■ Toole next contends that the prosecutor improperly introduced evidence regarding his incarceration at the ACI during the prosecutor's direct examination of Steven and prejudiced him by referring to his incarceration during his closing argument. The record reflects, however, that defense counsel failed to object at either instance. Thus, this issue is not properly preserved for our review. *See Warren,* 624 A.2d at 842; *Burke,* 529 A.2d at 627. We do note, however, that when defense counsel moved to pass the case on the basis of allegedly prejudicial remarks by the prosecutor, he did not enumerate the incarceration reference as a ground for a mistrial.

■ The next issue that Toole raises appears to be that the trial justice erred by not granting his motion to pass the case on the basis of the prosecutor's closing argument, particularly allusions to Donna's fear for her younger sister and a reference to him as a "sick criminal." He argues that after the prosecutor's closing argument the trial justice issued a "watered-down" cautionary instruction that failed to address one of his objections that had been sustained.

The state contends that the trial justice properly denied the motion to pass because the prosecutor's reference to the younger sister was not objectionable and did not even merit a cautionary instruction. The state also asserts that the prosecutor's "sick criminal" comment must be placed in the context of Steven's testimony that Toole had told Steven that Toole was "sick." The prosecutor's comment, therefore, was a remark concerning Steven's testimony. The state further maintains that the statement was not so prejudicial as to warrant a mistrial and that the comment was harmless beyond a reasonable doubt because evidence of Toole's guilt was "so overwhelming." The state also emphasizes that the jurors received instructions

that arguments of counsel were not evidence and that they were required to disregard evidence to which an objection was sustained and testimony or remarks ordered stricken.

In order to respond to these arguments, we must review a portion of the trial proceedings, particularly three of defendant's objections. During the prosecutor's closing argument, he referred to Donna's testimony concerning her fear for her younger sister as motivation for her coming forward with her allegations of abuse. The trial justice sustained defense counsel's objection to this allusion. Then, in the prosecutor's review of Steven's testimony, he remarked that Steven did not want to be at the trial and that he was a credible witness. The prosecutor proceeded to state:

> "He says he saw his father. He said my father admitted he did something wrong to [Donna], and he was sick. There is admission. Something wrong to [Donna]. And he was sick. He is sick. He's a criminal. He may be a sick criminal, but he's a criminal."

Defense counsel objected on the ground that the prosecutor was inflaming the jury's passions, and the trial justice overruled this objection.

The prosecutor also referred to defense counsel's cross-examining Donna regarding her grades. He stated that her grades started deteriorating when Donna reached the age of sixteen or seventeen, "when the sister had been born. She started to realize [h]ow absolutely wrong it was, and then—." Defense counsel objected at that point on the grounds that the prosecutor again referred to her sister. The trial justice said, "Let's proceed, please," and overruled the objection.

After the prosecutor's closing argument, defense counsel requested a cautionary instruction with respect to the references to Donna's younger sister and the "sick criminal" comment but expressed doubt that such an instruction would cure the prejudice. He also moved for the trial justice to pass the case. The trial justice denied the motion to pass and stated:

> "The evidence and record I'm sure will demonstrate that to the extent there was any substantive or lengthy testimony about

the sister it occurred during the course of cross-examination when [defense counsel] put questions to [Donna]. And, in response to those questions, or question, it was [Donna] who told [defense counsel] about her fears with regard to her sister * * *. At that point [defense counsel] at no time, either then or later, ever requested that the answer be stricken, or otherwise objected to the answer that was elicited in response to his questions."

After a brief recess, the trial justice issued the following cautionary instruction: "There was comment made by [the prosecutor] during the course of arguments that the defendant, according to [the prosecutor], was some sort of sick criminal. You are to disregard that comment. It was inappropriate."

■ The decision of whether to grant a motion to pass the case is within the sound discretion of the trial justice. *State v. Martinez*, 624 A.2d 291, 294 (R.I.1993). A motion to pass the case is a motion for a mistrial. *See State v. Girouard*, 561 A.2d 882, 890 (R.I.1989). This court's inquiry with regard to such a motion is restricted to determining whether the trial justice abused his or her discretion. *Martinez*, 624 A.2d at 294. We give the trial justice's determination great weight and do not reverse unless he or she is clearly wrong. *See Girouard*, 561 A.2d at 890; *see also State v. Camirand*, 572 A.2d 290, 294 (R.I.1990).

■ When a party moves to pass the case, the trial justice must assess the prejudicial impact of the statements. *See State v. Usenia*, 599 A.2d 1026, 1032 (R.I.1991). Even if the trial justice determines that a remark was prejudicial, he or she is not required to grant the motion to pass. *See id.* If the trial justice determines that the prejudice is curable, he or she must issue a timely and effective instruction. *Id.* We have stated that a prosecutor may express his or her opinion regarding a defendant's guilt as long as it is based on the evidence and does not imply to the jury that such opinion derives from knowledge outside the record. *See State v. Conway*, 463 A.2d 1319, 1324 (R.I. 1983).

In the case at bar the trial justice determined that no prejudice inured to Toole with respect to remarks regarding the younger sister or that Toole had waived this issue. With respect to the "sick criminal" remark, the record reflects that the trial justice issued a timely and effective curative instruction. Consequently, we conclude that he did not abuse his discretion and was not clearly wrong in denying Toole's motion to pass the case.

Toole next argues that the trial justice erred in permitting the prosecutor to ask Donna leading questions on direct examination without a showing that she was unable to testify under proper direct examination. He points to two objections concerning leading questions that the trial justice sustained but states that they were background questions. He offers three examples of the state's improper leading on direct examination of Donna in addition to those queries.

The state asserts that the prosecutor did not lead Donna in her direct examination and that the issue is not preserved for review. The state maintains that defense counsel registered only a general objection to two allegedly leading questions and made no objection to another.

The record reflects that the trial justice sustained two objections on the basis of the form of questions concerning the places and dates of Donna's residences. The first claimed "example" of improper direct examination that Toole raises did not receive an objection by defense counsel. It is therefore not properly preserved for our review. *See Warren,* 624 A.2d at 842; *Burke,* 529 A.2d at 627.

The second example was the following query by the prosecutor after a thirteen-minute recess in the middle of Donna's direct examination: "[Donna,] you indicated that the acts continued after you moved out of Providence. Did they also continue throughout the period until you moved to Pawtucket?" Defense counsel objected, and Donna responded in the affirmative. Defense counsel moved to strike her answer, and the trial justice overruled the objection and allowed her answer to stand.

Defense counsel's objection was not sufficiently focused so as to call the trial justice's attention to the basis for the objection. *See Warren,* 624 A.2d at 842. If this issue had been properly preserved for our review, however, defendant would not prevail on this claim. A leading question "suggests the desired answer." *See Girouard,* 561 A.2d at 888. The prosecutor's query did not suggest any answer. His preliminary statement before the query was intended to orient those in the courtroom to the point reached prior to the recess. Additionally, although leading questions are generally not allowed on direct examination, a trial justice may exercise his or her discretion to permit them. *See State v. Brown,* 574 A.2d 745, 748 (R.I. 1990). We shall not disturb such a determination unless we find an abuse of discretion or if there is a "danger of substantial injury to the defendant." *See id.*

The third example that Toole offers occurred when the prosecutor asked Donna the following question during her description of her father's particular sexual acts, which included oral and anal intercourse and vaginal penetration with his fingers: "Now, with regard to what you say is an attempt to put his fingers in your vagina, would you describe that, if you could, in a little more detail how he made the attempt; how far he got in his attempt." Defense counsel objected without stating any grounds, and the trial justice overruled the objection.

This issue has not been properly reserved for our review because the objection was a general one. *See Warren,* 624 A.2d at 842. We do note, however, that the prosecutor's question does not fall under our definition of a leading question. *See Girouard,* 561 A.2d at 888.

With regard to the two leading questions to which the trial justice sustained objections, he acted properly. The trial justice did not abuse his discretion. *See Brown,* 574 A.2d at 748.

The final issue that Toole raises is his claim that the trial justice erred by unduly restricting defense counsel's cross-examination of Donna with regard to three queries or

areas of inquiry. He argues that the case turned on Donna's credibility and that his defense was predicated on the proposition that she had fabricated her allegations. Therefore, he contends, foreclosing his cross-examination attempts to show bias against him or her motive to lie "diluted his defense and denied him a fair trial."

The state asserts that defense counsel was not restricted in his cross-examination. It maintains that the record reflects that he enjoyed wide latitude in his cross-examination and does not support his claim of restriction.

■ We shall review each claimed instance of restriction individually. Toole claims that the first instance of curtailment took place when he was attempting to lay a foundation to show that Donna brought her complaint because of problems with the family's restaurant business. Defense counsel asked Donna, with reference to Toole, "You could tell he liked [his job], is that right? Did he cooperate with your mother in her desire to build a restaurant business in Warwick?" The trial justice sustained the prosecutor's objection to this query, and defense counsel proceeded to ask the following: "Your father was working his regular shift with the police department, Pawtucket Police Department. He was helping out in the restaurant at the same time, wasn't he?" The trial justice overruled the prosecutor's objection and allowed Donna to answer, "He was helping to set it up, and then afterwards he was working more at the police station."

The state correctly points out that both before and after the challenged objection was sustained, defense counsel asked Donna numerous questions regarding the restaurant business and also asked her mother about the restaurant. The state also contends that the notion that Donna alleged that her father had engaged in digital, vaginal, and anal intercourse with her for years because she did not enjoy working in the family's restaurant is "absurd."

■ This court has stated that a defendant's right to cross-examine a state's witness is protected by the Sixth Amendment to the United States Constitution and article 1,

section 10, of the Rhode Island Constitution. *State v. Powers,* 566 A.2d 1298, 1303 (R.I. 1989). In a criminal case, effective cross-examination is the primary means by which the credibility and truthfulness of witnesses can be tested. *See State v. Soto,* 477 A.2d 945, 948 (R.I.1984); *State v. Freeman,* 473 A.2d 1149, 1153 (R.I.1984). The trial justice does not possess the discretion to grant or withhold such a right. *See Soto,* 477 A.2d at 948; *Freeman,* 473 A.2d at 1153. Once a defendant has conducted sufficient cross-examination to satisfy his or her constitutional right of confrontation, however, the trial justice does have discretion to limit cross-examination. *See Powers,* 566 A.2d at 1303.

The trial justice in this instance did not limit cross-examination. We also note that the question to which the objection was sustained did not relate to Donna's feelings about working in the restaurant but Toole's own cooperation in that family venture. Once defense counsel rephrased his question, he received an answer. He also asked numerous other questions regarding the restaurant. The trial justice committed no error with respect to this inquiry.

■ The second claimed restriction of cross-examination occurred when defense counsel attempted to question Donna regarding her stated reason for coming forward with her allegations. He asserts that he challenged her statement that she was afraid for her younger sister.

The following exchange took place after defense counsel asked Donna whether she had told anyone in elementary school in Pawtucket about the events:

"A[:] During the time that I was growing up I always thought that I could just forget about it and it would go away. And, it didn't go away. When my mother had another daughter is when I started getting scared. I knew it wasn't my fault—what would happen to me. But if he did it to my sister it would be my fault because I didn't say anything.

"Q[:] He never did anything to your sister, did he?

"A[:] I don't know.

"Q[:]  They checked your sister out.  He never did anything to your sister, did he?

"A[:]  Well, pretty sure he would have.  Yes.

"Q[:]  Could I have a yes or no answer, please, Your Honor?

"THE COURT:  Answer the question, if you know.

"A[:]  No.

"Q[:]  You don't know?

"A[:]  He didn't do anything to my sister.

"Q[:]  Your fears about your sister * * * were unfounded, weren't they[?]"

The prosecutor loudly objected, and the trial justice sustained the objection.

The state argues that the trial justice sustained the objection because the form of the question was improper and that defense counsel received an answer to every other question he posed concerning this subject.  The state also contends that it is somewhat difficult to take seriously defendant's allegation that he was restricted from inquiring adequately into Donna's fear for her sister when defense counsel later complained regarding the prosecutor's mention of this subject.

We believe that defense counsel was not restricted in his cross-examination.  The trial justice merely upheld one objection to one of several questions that he asked on the topic.  Further, defendant's claim that he was restricted in his cross-examination of Donna regarding her fear for her sister detracts from his challenge to the prosecutor's very mention of this fear.

■  The third claim that defendant raises in this regard is that the trial justice limited his cross-examination of Donna "concerning her claim that the abuse had caused her grades to suffer[.]"  He argues that defense counsel attempted to prove that her falling grades did not motivate her to come forward with her sexual-abuse allegations.

The state contends that Donna never stated that the abuse caused her grades to decline.  On the contrary, defense counsel raised the issue in an ultimately unsuccessful effort to show that because her grades did not suffer, she could not have been abused.

The state asserts that defense counsel's questioning "backfired" when Donna testified that her grades did in fact decline.

The record reflects that defense counsel did attempt to show that despite Donna's claimed abuse, her performance in school was not affected.  Donna actually testified, however, that her grades did decline.  The record also indicates that the trial justice sustained the prosecutor's objection just after defense counsel asked the following query, after eliciting from Donna testimony that her parents had received a letter informing them that Donna might not be graduating because of her grades:

"That didn't spur you on?  Tell the teachers, 'Hey, look.  There's something wrong.  I can't stand this anymore.  My father is doing this to me all these years.  I want to see the principal.  I want to see the Coventry Police.  I want to report him.' "

In sustaining the objection, the trial justice remarked, "We have been over this a number of times * * *."  Defense counsel subsequently repeated the basic question regarding whether Donna had told anyone about her problems during her senior year, and he received an answer.

■  This was not an instance in which a trial justice sustained an objection and curtailed cross-examination.  Defense counsel received an answer to the basic question that he posed.  The right to cross-examination does not imply an absolute right to ask any question regardless of how objectionable.  The trial justice committed no error on this claim.

Consequently, for the reasons stated, the defendant's appeal is denied and dismissed.  The judgment appealed from is affirmed, and the papers are remanded to the Superior Court.