STATE

v.

David LAMPHERE.

No. 94-74-C.A.

Supreme Court of Rhode Island.

June 1, 1995.

---

1. The trial consumed nine days and resulted in a record of over 1,000 pages of testimony.

Jeffrey Pine, Atty. Gen., Andrea Mendes, Sp. Asst. Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This case comes before us on the appeal of the defendant David Lamphere, from judgments of conviction on six counts of second-degree child molestation, G.L.1956 (1981 Reenactment) § 11–37–8.3, as amended by P.L. 1988, ch. 219, § 1, and § 11–37–8.4, as amended by P.L.1984, ch. 59, § 2. On appeal the defendant contends that the trial justice committed reversible error by (1) failing to give a cautionary instruction to the jury, (2) failing to limit the jury's deliberations to the bill of particulars, (3) impermissibly limiting the cross-examination of certain state wit-

nesses, (4) denying the defendant's motion in limine, which sought to preclude the defendant's prior convictions, (5) not allowing the defendant to inquire about the whereabouts of a witness, and (6) refusing to conduct a voir dire of the jurors for potential prejudice. For the reasons set forth below, we reverse the judgments of conviction and remand the case for a new trial consistent with this opinion. The facts of the instant case as are pertinent to this appeal are gleaned from the record below.

On April 4, 1991, defendant was indicted by a grand jury on six counts of second-degree child molestation in violation of §§ 11–37–8.3 and 11–37–8.4, and one count of first-degree child molestation, § 11–37–8.1, as amended by P.L.1988, ch. 219, § 1 and § 11–37–8.2, as amended by P.L.1984 ch. 59, § 2. The seven counts arose out of three separate incidents occurring sometime between January 1, 1988, and November 1, 1990, when the victim, Lori Taylor (Lori),[1] was between the ages of ten and twelve years old. The first of these incidents was alleged to have occurred in defendant's apartment in West Warwick; the second incident was alleged to have taken place in a swimming pool located behind defendant's residence; the third incident was alleged to have occurred in the victim's home in West Warwick.

At trial, testimony revealed that Lori often stayed with her second cousin, Lisa Betz, and Lisa's husband, John, on the first floor of their West Warwick residence while Lori's mother, Andrea Taylor (Andrea), worked afternoons and some nights.[2] The upstairs of the Betzes' residence, which had been converted into a separate apartment, was occupied by defendant and his wife Tammy Lamphere (Tammy), the daughter of the Betzes and third cousin to Lori. Testimony also revealed that Lori occasionally stayed overnight in the second-floor apartment with Tammy and defendant. The two apartments were connected by a common door allowing Lori to move freely between the two floors.

---

1. This is a fictitious name.

2. These are fictitious names.

At trial Lori testified about the first incident of sexual molestation, which occurred at defendant and Tammy's second-floor apartment in West Warwick sometime in 1988. This incident took place one night when Tammy had gone out shopping, leaving defendant and Lori, then ten years old, alone in the apartment. According to Lori, after she had gone into one of the bedrooms to lie down, defendant entered the room clad only in a bathrobe. He then began "rubbing and tickling" her legs, breasts, and vagina over her pajamas. Following a brief period, defendant ordered Lori to take her pajamas off. Fearing defendant, Lori complied. With her clothes now off, defendant again began "rubbing and tickling" her legs, breasts, and vagina. At some point defendant removed his robe, ordering Lori to touch his penis. He subsequently engaged in sexual intercourse with Lori. Because she was afraid of breaking up defendant and her cousin Tammy's marriage, Lori stated that she never told anyone of these events in the months that followed.

The second alleged incident of molestation occurred in a swimming pool located behind the Betz and Lamphere apartments when Lori was eleven years old. Lori testified that at one point when the two of them were the only ones in the pool, defendant began to touch and rub her breasts, buttocks, and vaginal area underneath her bathing suit.

The final incident occurred at Lori's home in West Warwick. The incident arose out of a visit by Tammy and defendant to the home of Lori's mother, Andrea. While Lori was coloring in her second-floor bedroom, defendant came up to the bedroom alone and sat down beside her. He then began to rub Lori's breasts underneath her pajamas for approximately five minutes.

Lori again stated that because she was afraid to break up Tammy and defendant's marriage, she refused to disclose any of the incidents of molestation except to her friend and next-door neighbor, to whom we shall refer as Amy. While the incidents of molestation were occurring Lori told Amy, during a conversation the two had in the back yard of Lori's home, that defendant had sexually molested her several times. However, Lori made Amy promise not to tell anyone of these incidents, and Amy agreed.

Finally, in November 1990, Lori revealed to Tammy that she had been repeatedly sexually assaulted by defendant. The revelation came approximately three months after Tammy had separated from defendant and had moved into Andrea's home. While Lori and a friend were upstairs, they overheard Tammy confronting defendant over the telephone with an allegation that defendant had previously molested a young boy. Tammy had received this information from defendant's nephew, Teddy Lamphere, who had become romantically involved with Tammy shortly before defendant and Tammy separated. After overhearing this allegation, Lori told Tammy, who was still on the phone with defendant, that defendant had molested her too. Lori decided to tell Tammy at this point because she did not want Tammy to reconcile with defendant, fearing that she "would have to go through it all over again."

As a result of these three incidents, defendant was indicted on six counts of second-degree child molestation and one count of first-degree child molestation. In the state's answer to defendant's motion for a bill of particulars, the prosecution indicated that the first four counts of the indictment arose out of the single incident in defendant's second-floor apartment bedroom. The first three of these counts were for second-degree child molestation. Specifically, the first two counts alleged that defendant had touched Lori's breasts and vagina while the third count contended that defendant had ordered Lori to touch his penis. The fourth count alleged that defendant had engaged in sexual intercourse with Lori, thereby committing first-degree child molestation.

Counts 5 and 6, alleging second-degree child molestation, arose out of the separate incident occurring in the swimming pool behind the Betz and Lamphere apartments. Specifically, these two counts alleged that defendant had touched Lori's buttocks and breasts. The final count, count 7, alleged that defendant had committed second-degree child molestation by touching Lori's breasts at her residence in West Warwick.

Following two and one-half days of deliberation, the jury returned a verdict of guilty in regard to all six counts of second-degree child molestation. However, the jury was unable to reach a verdict on the one count of first-degree child molestation, which resulted in a mistrial concerning that count. After a denial of his motion for new trial, defendant was sentenced to six concurrent sentences of twenty years, of which ten years were to be served. The defendant now appeals.

On appeal defendant contends that the trial justice committed reversible error in six particular instances by (1) failing to give a limiting instruction regarding several uncharged acts of sexual assault testified to at trial by Lori, (2) refusing to limit the jury's deliberations to the bill of particulars, (3) impermissibly limiting defense counsel's cross-examination of certain state witnesses, particularly with respect to their prejudices and biases (4) refusing to allow defense counsel to inquire into the whereabouts of Teddy Lamphere during cross-examination of Tammy (5) denying defendant's motion in limine which sought to preclude the use of his prior criminal convictions by the prosecution if he chose to testify, and (6) refusing to conduct a voir dire of the jury for potential prejudice arising from some members' possible observation of Lori crying in the hallway of the court house while being comforted by a relative.

■ In the first issue on appeal defendant contends that the trial justice erred by failing to give a limiting instruction regarding the admission of several alleged uncharged acts of sexual assault perpetrated by him against Lori. Specifically, defendant avers that by failing to give a limiting instruction on the proper use of these prior uncharged instances of sexual assault either when the testimony was initially elicited or during the final charge, the trial justice allowed the jury free rein to use this evidence to impermissibly prejudice defendant. The defendant agrees, however, that this evidence was properly admissible to show defendant's lewd disposition or design toward Lori, see *State v. Tobin*, 602 A.2d 528 (R.I.1992), but now only takes issue with the fact that no limiting instruction was given. In response the state, while conceding that some sort of limiting instruction should have been given, counters that defendant was not prejudiced by this omission, especially given defense counsel's extensive inquiry into these uncharged acts during his cross-examination of Lori.

At trial Lori testified during direct examination about numerous instances of sexual molestation committed by defendant between January 1, 1988, and November 1, 1990, that were not charged in the indictment or specified in the bill of particulars.[3] However, the

---

3. Direct examination of Lori about the first incident of sexual assault, which comprised counts 1 through 4, revealed the following:

"Q. Was the touching before or after you took your clothes off?
"A. Before and after.
"Q. Before and after?
"A. Uh hum.
"Q. And when you say 'he touched you,' where did he touch you?
"A. On the legs and on the chest and on the vaginal area.

\* \* \* \* \* \*

"Q. Now, you mentioned that touching was both before and after your clothes had come off, did he touch \* \* \* all three of those areas both before and after?
A. Yes.

\* \* \* \* \* \*

Q. [Lori], when he touched your vagina, was it on the outside or inside of your vagina?
A. Outside and inside."

The prosecutor's questioning of Lori about the incident in the swimming pool, comprising counts 5 and 6, produced the following colloquy:

"Q. Okay, how about you mentioned your buttocks and vagina, what kind of touching was there?
"A. Sort of like rubbing.
"Q. Okay. And we talked about this, about the first time, the vagina, the rubbing, was it inside or outside?
"A. Inside and outside.

\* \* \* \* \* \*

"Q. Now, [Lori], we talked about the pool and your house, you said only one time each there, is that right?
"A. Uh hum.
"Q. How about at David's apartment, David and Tammy's apartment, you told us about the first time; were [there] other times there?
"A. Yes.
"Q. Was it always the same type of touching?
"A. Sometimes.
"Q. Okay, what—well let's talk a little bit more about that. You said the first time it happened in the bedroom?
"A. Yes.
"Q. David's bedroom?

record reveals that the trial justice never gave a limiting instruction concerning this evidence at any point during trial.

It is well established that evidence of prior uncharged acts of misconduct is not admissible to demonstrate a defendant's propensity to commit the crime charged. *Tobin*, 602 A.2d at 531; *State v. Pignolet*, 465 A.2d 176, 179 (R.I.1983); *State v. Jalette*, 119 R.I. 614, 624, 382 A.2d 526, 531–32 (1978); *see* Rule 404 of the Rhode Island Rules of Evidence. Rule 404(b) of the Rhode Island Rules of Evidence, however, allows evidence of these prior "bad acts" to be admitted if relevant to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable." *See Jalette*, 119 R.I. at 624, 382 A.2d at 532 (citing *State v. Beaulieu*, 116 R.I. 575, 359 A.2d 689 (1976)).

Prior to the 1987 adoption of the Rhode Island Rules of Evidence, we also held that "evidence of other not too remote" uncharged sexual crimes perpetrated against the victim of a sexual assault presently being tried may be admitted to demonstrate the " 'lewd disposition or * * * intent' " of the defendant toward that victim. *Jalette*, 119 R.I. at 627, 382 A.2d at 533 (adopting the holding in *People v. Kelley*, 66 Cal.2d 232, 424 P.2d 947, 57 Cal.Rptr. 363 (1967)). Additionally, we held that "evidence that the accused committed nonremote similar sexual offenses with persons other than the victim may be admitted to prove the presence of the traditional exceptions to the general rule, such as intent or motive." *Id.*

Following the adoption of the Rhode Island Rules of Evidence, we have had numerous occasions to reaffirm these general rules first enunciated in *Jalette. See State v. Toole*, 640 A.2d 965 (R.I.1994); *Tobin*, 602

"A. Yes.
"Q. Were [there] other times in the bedroom?
"A. I can't remember.
"Q. But you do remember it happening other times there?
"A. Yes.
"Q. Were there other times he rubbed your boobs and your vagina?
"A. Yes.

A.2d 528 (R.I.1992); *State v. Bernier*, 491 A.2d 1000 (R.I.1985). In recent years we have also had the opportunity to expound upon the numerous safeguards, first detailed in *Jalette*, that a trial justice must employ when such evidence is offered for admission. *See Toole*, 640 A.2d at 970–71; *Tobin*, 602 A.2d at 532.

One of the safeguards that has fully evolved out of *Jalette*'s cautionary admonitions is that during a sexual-assault trial the court has a sua sponte obligation "to offer a limiting instruction when admitting evidence of other sexual acts despite the general principle enunciated in Rule 105 of the Rhode Island Rules of Evidence that a limiting instruction is to be given [only] upon request." *Toole*, 640 A.2d at 971 (citing *State v. Brown*, 626 A.2d 228, 234 n. 2 (R.I.1993)); *Jalette*, 119 R.I. at 624, 382 A.2d at 532; *see State v. Martinez*, 651 A.2d 1189, 1195 (R.I.1994) (trial justice's sua sponte obligation to give a limiting instruction with respect to prior uncharged sexual offenses arises only when defendant is on trial for a crime of sexual assault). Additionally, in his or her charge to the jury, a trial justice must "designate with particularity the specific exceptions" such evidence is being narrowly admitted pursuant thereto. *Jalette*, 119 R.I. at 627–28, 382 A.2d at 533.

Turning to the instant case, the state concedes that the trial justice failed to give a specific limiting instruction that is mandated by our rules and case law. Thus, our sole task is to determine if such failure constitutes reversible error. We believe that it does.

In *Toole*, we held that a trial justice's failure to issue a limiting instruction after uncharged acts of sexual assault were admitted did not constitute reversible error when "defense counsel utilized and referred to the evidence that [defendant] calls objectionable

"Q. Both on top and under your clothing?
"A. Yup.
"Q. Were any other times when he put his penis inside of your vagina?
"A. Yes.
"Q. [Lori], how many times do you think overall these things happened?
"A. Um, eight or nine times.

numerous times." *Id.* at 971. Seizing upon this language, the state points out that defense counsel in the instant case inquired extensively about such evidence during cross-examination of Lori and in fact used the evidence to defendant's advantage by allegedly confusing the jury. As such, the state contends that the trial justice's failure did not constitute reversible error. However, *Toole* is clearly distinguishable.

In *Toole* we initially noted that the defendant neither filed a motion in limine seeking to exclude such evidence nor requested a limiting instruction at the time such evidence was elicited. It was in this context that we pointed out that defense counsel had used such evidence to his client's advantage "to discredit [the victim] on cross-examination, to call into question why a girl of four would not tell her mother about the heinous sexual abuse that she claimed her father had perpetrated." *Id.* at 971. Thus given the fact that defense counsel never complained at any juncture about the admission of such evidence and repeatedly utilized the evidence in his cross-examination of the victim and in closing argument, we held that the trial justice's omission was not reversible error.

In the instant case we note that the quantum of uncharged acts of sexual misconduct perpetrated by defendant against Lori that were allowed freely into evidence during direct examination dwarfs those admitted in *Toole.* Additionally, prior to trial defendant made a specific motion in limine to preclude testimony by Lori concerning two acts of digital penetration committed by defendant against her that were not charged in the indictment but which the prosecution had recently notified defendant were going to be elicited during Lori's trial testimony. During the ensuing arguments to the trial justice on the motion, the prosecutor made clear that not only would these two uncharged acts be testified to but "there will be testimony about a course of [uncharged] conduct that occurred over a several year period" and that such conduct "is clearly admissible and permissible pursuant to Rule 404(b)." In re-

sponse, defense counsel requested a cautionary instruction be given "at the time the witness starts to testify about these incidents that are not charged in the indictment."

The trial justice denied the motion in limine and stated that "I really don't think I would need to give a cautionary instruction * * *. I think that can be covered by the general instruction because they are going to be instructed that they would have to find * * * him [guilty] within the four corners of the indictment." It was only after the denial of defendant's motion in limine and request for a cautionary instruction that defense counsel utilized this evidence during cross-examination of Lori—evidence that had previously been brought out by the state during direct examination.

We also note that the trial justice failed to give a limiting instruction with respect to such evidence in charging the jury. *See Jalette,* 119 R.I. at 627–28, 382 A.2d at 533 (in charging jury, trial justice has a sua sponte obligation to "designate with particularity the specific exceptions" such evidence is being narrowly admitted pursuant thereto). In fact not only was there a lack of a limiting instruction concerning such evidence either when it was initially elicited or during the final charge to the jury, but the trial justice also failed to adequately limit the jury's deliberations to the bill of particulars. *See State v. LaChapelle,* 638 A.2d 525, 528 (R.I.1994) (trial justice must "charge the jurors in a manner that makes clear that in order to convict the defendant, they must find the precise charge set forth in the bill" of particulars).[4] Specifically the trial justice failed to admonish that in order to find defendant guilty of counts 1 through 4, the jury must find that all four acts were part of a single incident occurring at defendant's apartment as was specified in the state's answer to defendant's amended motion for bill of particulars. *See State v. Brown,* 574 A.2d 745 (R.I.1990) (bill of particulars restricts state to allegations set forth in the

---

4. We note that defendant has set forth the trial justice's failure adequately to limit the jury's deliberations to the bill of particulars as a separate ground for reversal. However, we feel that since the issue is so closely related to the trial justice's failure to give a limiting instruction with respect to the uncharged acts of sexual assault, the two issues are better treated together.

bill, as such trial justice erred in allowing jury to convict defendant of uncharged acts).

■ Although the state now complains that defendant "should not be allowed to profit from his furtiveness," its argument belies the realities of the situation. Having done his best to keep such evidence out and failing even to get the trial justice to grant a cautionary instruction, defendant was now faced with a deluge of other-crimes evidence flowing from the state's direct examination of Lori. In the face of such an overwhelming amount of Rule 404(b) evidence, defense counsel was left with little choice but to attempt to utilize such evidence to discredit Lori. However, the state counters that during deliberations the jury queried the trial justice on why, after hearing about numerous acts of sexual intercourse perpetrated by defendant, he was now only charged with one count of first-degree child molestation.

The state argues that this confusion, allegedly created by defense counsel's extensive inquiry into these uncharged sexual crimes during cross-examination of Lori, worked to defendant's benefit. As proof the state points to the fact that defense counsel declined the state's request for a cautionary instruction regarding such evidence when the jury's query was made known. It also cites the fact that the jury was ultimately hung in regard to the first-degree count.

Again the state misses the realities of the situation. This is not a case like *Toole, supra*, where defense counsel extensively utilized other-crimes evidence during cross-examination to discredit the complaining witness *in the absence* of any request for a limiting instruction or the filing of a motion in limine or even any objection. In fact, it is the state that has attempted to have it both ways: initially opposing defendant's motion in limine, as well as his request for a cautionary instruction, but after defense counsel's crossexamination of Lori and the jury's subsequent query to the trial justice, was so concerned by the turn of events that the *prosecution sought* a limiting instruction regarding all the 404(b) evidence that had come out during testimony.

Furthermore, we believe the fact that defense counsel requested that such a general instruction *not* be given when informed of the jury's query is largely irrelevant to our analysis. It does nothing to detract from the stark reality that numerous instances of uncharged sexual crimes were admitted freely into evidence unfettered by any limiting instruction despite defendant's specific request for a limiting instruction and over his objections registered during pretrial arguments. *Cf. State v. Toole*, 640 A.2d 965 (R.I.1994) (defendant's failure to complain about the admission of other crimes evidence at any point during trial and use of such evidence during cross-examination of victim rendered any error harmless). Even if defendant may have profited by the confusion that the admission of such evidence may have engendered with respect to the first-degree count, defendant was ultimately convicted on all six counts of second-degree child molestation. In fact, the bulk of the uncharged sexual-crimes evidence admitted freely into evidence was properly characterized as acts constituting second-degree child molestation. In short, given the lack of a limiting instruction at any juncture of the trial concerning such evidence and the trial justice's failure to admonish the jurors that their deliberations must conform to the bill of particulars, the jury was perfectly free to utilize this evidence to convict defendant simply for an alleged propensity to commit such acts as well as for acts not specified in the bill of particulars. *See Brown*, 574 A.2d at 748–49; *Jalette*, 119 R.I. at 624, 382 A.2d at 532.

We are therefore of the opinion that the trial justice's failures constituted reversible error since it is " 'reasonably possible that such [unrestrained] evidence would influence an average jury on the ultimate issue of guilt or innocence.' " *State v. Benoit*, 417 A.2d 895, 901 (R.I.1980); *cf. State v. Cassey*, 543 A.2d 670, 677 (R.I.1988) (any error in admission of uncharged acts of sexual crimes was harmless in light of trial justice's limiting instruction with respect to such evidence). Our conclusion is buttressed by a number of considerations.[5]

---

5. Given our disposition of defendant's first two grounds for appeal, we do not reach the remain-

Initially, we again note the quantum of such evidence admitted freely into evidence. Additionally, there was no medical evidence to corroborate Lori's testimony that she had been sexually assaulted. *Cf. Brown,* 626 A.2d at 234 (failure to give limiting instruction with respect to uncharged sex crimes was harmless error, in part because expert medical testimony corroborated victim's testimony concerning sexual intercourse). The jury also took over two and one-half days to deliberate. *See State v. Pugliese,* 117 R.I. 21, 362 A.2d 124 (1976) (fact jury deliberated for six hours was evidence that admission of statement constituted reversible error); *cf. State v. Burns,* 524 A.2d 564 (R.I.1987) (pointing to the fact that jury took less than twenty minutes to reach verdict and overwhelming evidence of defendant's guilt as proof that improper admission of prior bad act did not influence jury's verdict). Lastly, although the first-degree count ended in a mistrial, the jury ultimately convicted the defendant on all six counts of second-degree child molestation and much of the uncharged sexual-crimes evidence admitted was properly characterized as acts constituting second-degree child molestation.

Consequently the defendant's appeal is sustained. The judgments of conviction are VACATED, and the case is REMANDED to the Superior Court for a new trial on all six counts of second-degree child molestation.

BOURCIER, J., did not participate.