STATE

v.

Robert P. MOREY.

No. 97–303–C.A.

Supreme Court of Rhode Island.

Jan. 8, 1999.

Annie Goldberg, Aaron L Weisman, Providence, for plaintiff.

David N. Cicilline, Bristol, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on the defendant's appeal from a final judgment of con-

victions following a Superior Court jury trial on eleven counts of second degree child molestation sexual assault.

Robert Morey (defendant) had been a long-time family friend of Stephanie and Paul Smith[1] and their two children, Joseph and David. Stephanie was especially close to the defendant because prior to her marriage to Paul, and for a six-month period during her marriage, Stephanie had been involved romantically with the defendant. Even after their affair had ended, the defendant remained good friends with both Stephanie and Paul and in fact, he often visited and slept overnight at the Smith home.[2] During those visits, he had numerous opportunities to spend unsupervised time with the Smith children.

Through his friendship with the Smiths, the defendant also came to know and spend time with Edward White (Edward), who is the son of Frank and Mary White, close friends of the Smiths. Edward was younger than the Smith boys, but he often spent time with them when his parents visited the Smiths. The defendant was present during many of those visits.

In the spring or summer of 1991, the defendant asked Edward if he wanted to go for a walk in the woods. Edward was five years of age at the time. After receiving his parents' permission, Edward joined Joseph, David, the defendant for a walk. Joseph and David had their bicycles with them and at some point during the walk, Joseph and David rode ahead, leaving behind the defendant and Edward, who was then too young to ride a bicycle. While Joseph and David were a fair distance ahead, Edward told the defendant that he had to go the bathroom. The defendant then instructed him to go into the woods and relieve himself. Edward proceeded to do so. As Edward relieved himself, the defendant, the ever-vigilant chaperone,

watched him. When Edward finished, the defendant asked Edward if he could hold Edward's "peanut."[3] Young Edward, apparently too shocked to respond, remained silent and the defendant proceeded to hold Edward's penis for a few "seconds." Afterwards, the defendant began to relieve himself. While doing so, the defendant asked Edward if he wanted to hold the defendant's "peanut."[4] After this incident, the defendant told Edward that it was a secret between Edward and himself and that Edward should not tell anybody about what had taken place.

A year later while he was watching television, young Edward suddenly became visibly upset. When his concerned mother asked him what was troubling him, Edward began talking about the walk that he had taken the year before with the defendant and the Smith children. He said that he had a secret with the defendant and that he was not supposed to tell anyone about it. After persistent questioning by his mother, Edward eventually revealed, on the following day, that the defendant had touched his "peanut." Mary immediately went to her husband with this unexpected and disturbing information.

Because the Whites were such good friends with the Smiths and because the defendant had spent so much time with the Smith children, the Whites then decided to tell the Smiths about what they had learned of the defendant. The Smiths then questioned their own two boys, who at first denied any touching by the defendant, but eventually admitted that the defendant had touched their penises and buttocks. The Smiths then went to the police, who in turn contacted the Whites.

Following an investigation by the police, the matter was referred to the Department of the Attorney General. On May 24, 1993, a criminal information charging the defendant

---

**1.** The names of all parties except the defendant are fictitious for the purpose of protecting the privacy of the parties.

**2.** Stephanie's husband, Paul, did not learn of the affair until the Smiths went to the police station to report the child molestation, at which time Stephanie informed him of her dalliance with the defendant.

**3.** Throughout the trial, Edward refers to his penis as his "peanut."

**4.** There is nothing in the record that suggests that Edward actually touched the defendant's penis.

with six counts of second degree child molestation involving Joseph, five counts involving David, and one count involving Edward, was filed in the Kent County Superior Court. *See* G.L.1956 § 11–37–8.3 (second degree child molestation statute).

At the defendant's trial on the twelve information charges, the testimony revealed that the defendant had not been completely satisfied with the single incident of his touching of Edward's penis in the woods, and that he had also preyed on the Smith children. The defendant had taken advantage of many opportunities when alone with the Smith children to fondle their penises and buttocks. The defendant first touched Joseph, the older Smith child, when Joseph was seven or eight years of age. At that time, Joseph was sitting on the lower bunk of his bed, watching his brother play video games. The defendant came into the room, put his hand in Joseph's pants and touched his penis for a "few minutes." When talking to his brother immediately after the incident, probably too ashamed, embarrassed or confused to say more, young Joseph merely commented that "Bob [the defendant] is gay." Five other similar touching incidents between Joseph and the defendant followed at different times in various rooms of the Smith house—many occurring after the defendant had spent the night at the Smiths'. During two of the incidents, the defendant placed Joseph's hand on the defendant's penis.

Joseph's brother, David, did not escape the defendant's licentious advances either. Commencing when he was just six years of age, David was touched illicitly on his penis and buttocks five times.[5] On several of those occasions, David was warned by the defendant not to tell anyone about what he had done.

After a jury trial, the defendant was convicted on a total of eleven counts of second degree child molestation. In his timely filed appeal, the defendant advances three challenges to his conviction.

The defendant first challenges the testimony of Mary White, Edward's mother.[6] Her testimony related her conversation with Edward during which Edward had told her what the defendant had done during their walk in the woods together. The defendant alleges that her testimony was impermissible hearsay. The defendant's challenges fail for several reasons.

■ As to the defendant's first claim of error concerning what he believes to have been impermissible hearsay, we conclude that the defendant's challenge to that testimony was not properly preserved in the record. Defense counsel's first objection to the supposed hearsay occurred after the following colloquy:

"Q Did he [Edward], at any time, say anything to you?

"A Not much. He just started talking about the walk in the woods."

Defense counsel then objected and moved to strike the answer on the basis of hearsay. After a bench conference that was not recorded and is not part of any record, the objection was overruled. A second objection, also made without any specified basis, later was made during Mrs. White's testimony, after the following colloquy:

"Q All right. When was it that you talked with your son about the walk?

"A Possibly the next day, I kept—He was still upset and he was trying to tell me something and * * *."

That objection also was overruled without explanation. Until that point in the testimony, the prosecutor still had not elicited information about the actual child molestation that allegedly had taken place in the woods. No other objections were made during that part of Mary White's testimony concerning her conversation with Edward, and at no time during her testimony describing the child molestation in the woods did defense counsel ever object specifically on the basis

---

5. The trial jury on one of the five criminal information counts involving David returned a not guilty verdict.

6. We note that this claim of error by the defendant relates only to count 12 of the criminal information, the only count involving the molestation of Edward.

of hearsay or on any other specified basis .[7] Thus, the two isolated objections were not made in a timely manner when the specifically challenged testimony was being elicited. Therefore, the defendant's challenge to the testimony of Mrs. White was not preserved properly in the record and cannot be the subject of our review on appeal.

■ "It is well settled that this court will not review issues that were not preserved for appeal by a specific objection at trial." *State v. Pineda*, 712 A.2d 858, 861 (R.I.1998); *see also State v. Tempest*, 651 A.2d 1198, 1216 (R.I.1995) ("[a]s we have often stated, arguments on appeal that have not been adequately presented to the trial justice for his or her determination cannot be properly brought before us"); *State v. Toole*, 640 A.2d 965, 972–73 (R.I.1994) ("[a]ccording to our well-settled 'raise or waive' rule, issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal'; * * * [c]onsequently, allegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level"). Accordingly, we need not address the question of whether Mary White's testimony constituted impermissible hearsay.

■ However, even if we were to address the issue, we would conclude that the testimony was not hearsay. Pursuant to 801(d)(1)(B) of the Rhode Island Rules of Evidence, a statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Edward was the first witness presented at the defendant's trial. He testified about the events that occurred during his walk in the woods with the defendant in the spring or summer of 1991. He also testified that he told his mother about the incident after the events in question. During cross examination of Edward by defense counsel, defense counsel repeatedly raised the issue that Ed-

ward spoke to his mother about the incident two or three times before going to the police station, and that while being driven to the police station, Edward's mother reviewed the story with him and "reminded" him of parts of the story because he was beginning to forget the details. Defense counsel also elicited the fact that Edward's mother was present during his questioning at the police station and that more than once, she had helped him to answer some of the questions that were asked. When Mary White later testified, she only repeated what Edward had told her, which essentially duplicated Edward's testimony. Her testimony would not be considered hearsay, however, because during Edward's testimony defense counsel made an implicit charge that Mary, Edward's mother, had influenced him improperly prior to and during his statement to the police. Thus, her testimony simply demonstrated that Edward's description to her of the events in the woods never varied, despite defense counsel's attempt to suggest that she had influenced young Edward's testimony improperly. Accordingly, her testimony did not constitute inadmissible hearsay and was properly admitted as a prior consistent statement.

■ Additionally, even if Mary's testimony did rise to the level of being hearsay, its admission would constitute only harmless error. The defendant himself had admitted during trial to touching Edward's penis. However, he attempted to sanitize his action by saying that it was only for the purpose of preventing Edward from wetting himself while he was urinating, and that he only "flicked" Edward's penis and did not touch Edward for the purpose of child molestation. Because Mary White merely repeated what Edward had told her about how and when the defendant had touched his penis, a fact related to the trial jury by Edward as well as by the defendant, himself, any error in its admission would be harmless error. Accordingly, this claim of error by the defendant is

---

7. An objection was made, however, to the question "Did your son tell you about Mr. Morey indicating that he should keep this a secret?" on the basis of it being leading. That objection was sustained.

rejected.[8]

The defendant's next claim of error is that the trial justice improperly permitted the jury to hear of certain uncharged criminal acts during the presentation of the state's case on the eleven charges involving the Smith children.

In *State v. Toole,* we explained the rule regarding admissibility of uncharged acts.

"Rule 404(b) renders inadmissible evidence of other crimes, acts, or wrongs 'to prove the character of a person in order to show that the person acted in conformity therewith.' This rule further provides that such evidence may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable.' We have also upheld the admission of evidence of 'prior bad acts' when those acts are 'interwoven' with the charged offense in such a manner that tends to establish guilty knowledge, motive, intent, or the like." *Toole,* 640 A.2d at 970.

■ We went on to explain in *Toole* that there was "an 'almost universally recognized' exception to Rule 404(b) for the admission of evidence of uncharged sexual misconduct to show 'lustful disposition or sexual propensity.' "*Id.* at 971; *see also State v. Woodson,* 551 A.2d 1187, 1193–94 (R.I.1988) (upholding testimony regarding uncharged sexual assaults on the same victim when reasonably necessary to establish the defendant's lewd disposition or intent and adequate explanatory court instructions had been given). We conclude that the evidence elicited here was relevant not only for demonstrating a lewd disposition on the part of the defendant toward the Smith children, but also necessarily was interwoven with the eleven charged acts involving those children. Additionally, the trial justice gave more than adequate precautionary instructions to the jury regarding the uncharged sexual assaults.

■ The defendant complains now that, during the course of the defendant's trial, certain acts that were not included in the criminal information were introduced against him through the testimony of the two Smith children. Those acts included one instance of digital penetration of David's buttocks and the touching of the defendant's penis by Joseph. During the Smith children's testimony, those acts were described during their overall recitation of what had taken place between them and the defendant. Because the uncharged acts were related so closely in both time and place to the charged acts of molestation committed by the defendant and were so intricately interwoven with the charged acts, their admission was proper. *See State v. Gomes,* 690 A.2d 310 (R.I.1997); *State v. Jalette,* 119 R.I. 614, 382 A.2d 526 (1978). Furthermore, the trial justice gave timely and adequate cautionary instruction to the trial jury with respect to its consideration of that evidence. Following introduction of the evidence of Joseph's touching of the defendant's penis, the trial justice instructed the jury as follows:

"Ladies and gentleman of the jury, before we resume, you have heard some testimony from the witness with respect to the touching of the defendant's penis by this witness. I tell you now that the defendant has not been charged with that act. That information, that testimony has been offered in connection with other reasons, not to establish that that crime had or has been committed, but rather to establish an absence of mistake and/or the opportunity and perhaps intent on the part of the defendant, but not for the crime, and you're not to take into consideration that evidence as charging a crime or proving a crime committed by this defendant."

The trial justice additionally gave further instructions to the jury after later testimony revealed another incident of the touching of the defendant's penis:

"Ladies and gentlemen, once again, as when you came back from the recess, I tell you that the testimony that you are now

---

8. We do not feel the need to address the defendant's contention that Mary White's testimony constituted impermissible vouching because at no time during her testimony did she express an opinion as to the truthfulness of Edward's testimony. That conclusion is consistent with our opinion in *State v. Brown,* 709 A.2d 465 (R.I. 1998).

hearing with respect to the touching of the defendant's penis has not been charged by the State in this matter. You're not to consider it as a crime that has been charged. You are also not to consider it on the issue of whether or not the defendant did the acts that have been charged in this matter. But it is only evidence that is put before you to show an absence of mistake or perhaps intent on the part of the defendant, and you are to determine ultimately, under all the instructions and after you have all of the evidence, what evidence you accept and what evidence you reject, things of that nature. And I will instruct you much further and much more deeply about that at the proper time."

After the evidence concerning the penetration of David's buttocks, the trial justice once again gave timely cautionary instruction to the jury:

"Ladies and gentlemen of the jury, you are about to hear testimony with respect to sexual penetration. I tell you now that the defendant in this case, Mr. Morey, has been charged by the State with acts of sexual contact, and not, I repeat, and not with an act or acts of sexual penetration. Sexual penetration is an element of a different and a more serious crime under the laws of the State of Rhode Island. You're not to take this testimony or the area that it deals with as being an element of a crime that is here charged. It is not before you. The evidence is not being offered by the State in order to prove the guilt of this defendant with respect to any charge of sexual penetration, That just is not before this Court or before you as jurors.

"The testimony is being offered in order to present evidence with respect to issues of intent, absence of mistake or possibly lewd disposition on the part of this defendant. That is all. You must not use it for any other purpose.

"I also tell you now, and I will tell you again later, that you as jurors will be told ultimately by me, when I instruct you on the law, that you are the final arbiters as to the weight to be given to evidence and as to the credibility of witnesses. That is for you."

At the conclusion of his final instruction to the jury following trial, the trial justice gave the following supplemental instruction:

"A few concluding remarks, ladies and gentlemen. First of all, I want to remind you that during the course of testimony, there was some evidence produced with respect to the sexual penetration of young [David]. And there also was some evidence introduced with respect to alleged sexual contact with respect to the defendant's penis by one of the young alleged victims. I told you yesterday, and I remind you vehemently now, Mr. Morey has not been charged with either of those matters. And in connection with your deliberations, you're not to take into account the guilt or assess the guilt of Mr. Morey with respect to either of those types of allegations. That evidence was put before you solely for the purpose of indicating to you, to the extent that you believe that testimony, to the extent that you give it credence and accord it weight, to show opportunity, intent, lustful disposition, absence of mistake. That was the sole purpose of that testimony. And you are to use it only, if at all, for that purpose."

That extensive series of cautionary instructions given by the trial justice certainly limited the jury's consideration of the challenged uncharged acts. Those instructions, coupled with the fact that the trial evidence demonstrated so clearly the defendant's lewd disposition toward the Smith children and was interwoven so closely with the charged acts leads us to conclude that its admission was not error.

■ The defendant's final challenge to his convictions is that the trial justice's instructions concerning an alleged inconsistent pretrial statement given by a trial witness constituted reversible error. We disagree. The basis for the defendant's alleged inconsistent statement instruction challenge is that Edward gave an ambiguous answer at the beginning of his original statement to the police wherein he implied that the defendant had touched his penis *while* he was urinating.

"Q And what did you do?

"A   I went to go to the bathroom and he was holding my peanut."

The defendant fails to note, however, that in that same original police statement, young Edward had later clarified what he had earlier meant to say and told the police that he was touched *after* he urinated.

"Q   Did he touch your peanut while you were going to the bathroom, before you went to the bathroom or after you went to the bathroom?

"A   After."

Thus, his testimony at trial was not sufficiently inconsistent with his overall statement to the police and did not constitute a prior statement inconsistent with his later trial testimony. *See Tempest,* 651 A.2d at 1208. Further, the trial justice did instruct the jury with respect to any pre trial statements made by any trial witness that may have been inconsistent with anything said during trial by any of the trial witnesses:

"I tell you now that the credibility of a witness may be attacked by introducing evidence that on a former occasion, he or she made a statement inconsistent with testimony in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all of the facts and circumstances in evidence in deciding the weight to be given to the testimony of a particular witness."

Assuming, however, for the purpose of responding to the defendant's contention that young Edward's pretrial statement to the police did in fact rise to the level of a prior inconsistent statement, his challenge to the trial justice's jury instructions remains meritless. Certainly Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence has transformed prior inconsistent statement evidence into substantive evidence for a trial jury to consider. However, in this case, nothing said by the trial justice in his instructions to the trial jury violates that rule. Unlike the instruction given in *State v. Pusyka,* 592 A.2d 850 (R.I.1991), and relied upon by the defendant, in this case, the trial justice at no time instructed the trial jury that a previous inconsistent statement made by a trial witness was to be considered only "as affecting the credibility of that witness" and that the prior inconsistent statement "is not evidence itself." *Id.* at 854.

A fair reading of the instruction given to the trial jury in this case clearly reveals that at no point did the trial justice make or suggest any distinction between substantive and non-substantive evidence and, in fact, during his instructions to the trial jury, he referred to all of the evidence in the trial as being in the nature of substantive evidence. The defendant sees in the trial justice's jury instructions in this case only what he wants to see, and it becomes obvious indeed that his visionary acuteness is considerably less than twenty-twenty.

Accordingly, for all the foregoing reasons, the defendant Morey's appeal is denied and dismissed. The final judgment of convictions appealed from is affirmed and the papers in this case are remanded to the Superior Court.