## In re NATHANIEL M., et al.

### No. 98–011–Appeal.

Supreme Court of Rhode Island.

May 21, 1999.

Frank P. Iacono; Thomas J. Corrigan, Providence.

Martha Diamond, Providence; Frances K. Munro.

### ORDER

This child abuse and neglect case came before the Court for oral argument on May 11, 1999, pursuant to an order entered on March 16, 1999, directing the parties to appear and show cause why the issues raised in the respondent's appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

In May of 1995, Nathaniel Barnes (respondent) obtained sole domestic custody/possession of his children, Natasha (born November 17, 1989), Nathaniel (born December 7, 1991) and Tiffany (born May 28, 1993) after they had been removed from their mother's care for neglect and sexual abuse allegations as to Natasha.[1] On August 6, 1996, the respondent's girlfriend, Renee Hoban (Renee), brought the children into the Department of Children, Youth and Families (DCYF) after the respondent had violently assaulted her. DCYF placed the children into foster care and filed neglect and abuse petitions against the respondent. Later, DCYF withdrew the neglect and abuse allegations, replacing them with an allegation of dependency. On November 20, 1996, the respondent admitted to dependency and gave up the care, custody and control of his children to DCYF.

Meanwhile, on September 24, 1996, a Child Protective Investigator (CPI), Joyce Maldonado (Joyce) went to the foster home to investigate allegations that the respondent previously had sexually abused both Nathaniel, then aged approximately four and one-half years, and Tiffany, then aged approximately three and one-half years. The investigation was prompted when the foster mother found Nathaniel with another foster child's penis in his mouth. She also discovered that some of her underwear had been cut up and her remaining underwear had needles placed in the crotch area. Following the investigation, DCYF filed new sexual abuse and neglect petitions against the respondent with respect to both children.

At trial, the prosecution presented two witnesses, Joyce and the DCYF social worker assigned to the case, Rosa Cascalhiera (Rosa). Joyce testified concerning the statements made by the children at two separate sets of interviews. The first set was conducted by Rosa at the foster home. The second set was conducted at the Child Advocacy Center (CAC) with Rosa observing the interviews through a one-way mirror. Rosa was able to commu-

---

1. The respondent voluntarily gave up custody of Natasha prior to the commencement of the present action and she is not a subject of this appeal.

nicate with the interviewer through the use or a two-way communication system.

At the conclusion of the trial, the trial justice found that the respondent had sexually abused and neglected his children. In making this determination, the trial justice found the testimony of Nathaniel and Tiffany to be credible and uncontradicted. In addition, he found that "the father's testimony proved that he was, at best, ambivalent about caring for his children."

The respondent appeals the trial court's ruling, asserting that the trial justice committed reversible error when he permitted Joyce to testify as to the hearsay statements of the children at the interviews and when he found the children's testimony to be credible given the fact that they did not actually testify.

At trial, Joyce testified without objection that at the first set of interviews, Nathaniel told her that he had put his mouth on the penis of another foster boy in the foster home and that his father had done the same to him. He also told her that he had touched his sister in a sexual manner and that he had bitten her on her body. At this point, defense counsel objected to the prosecution's line of questioning pursuant to *In re Jessica C.,* 690 A.2d 1357 (R.I.1997). Acknowledging that the testimony had already been admitted, defense counsel stated: "I didn't speak fast enough on that. But as to future questions, I would object." The trial justice then suggested that defense counsel wait until she actually hears future questions before objecting.

Subsequently, the prosecution asked Joyce what else Nathaniel had said with respect to Tiffany. Defense counsel objected on the basis that Nathaniel's statements had not been voluntarily disclosed. Defense counsel basically asserted that four-year old Nathaniel, in an effort to divert attention and blame from himself for the incident with the other foster child, was attempting to blame his father for his behavior. The following colloquy then took place between defense counsel and the trial justice:

"THE COURT: But it was the first disclosure, wasn't it?

MS. MUNRO: But it was not—

THE COURT: Aren't you going to argue that as to the weight that should be given to it?

MS. MUNRO: Yes.

THE COURT: Not that it's inadmissible but as to the weight that's to be given to it?

MS. MUNRO: Yes.

THE COURT: All right. I'll allow the question."

Subsequently, Joyce testified without further objection that Nathaniel told her that "his father had put his penis in the father's mouth" and that he had never seen his father's penis "because his father would beat him with a belt if he did." Nathaniel admitted to Joyce that he cut up some of his foster mother's underwear and put needles in the remaining underwear. In addition, Nathaniel stated that his father would hit him with a belt on his legs and that it hurt.

"It is well settled that this [C]ourt will not review issues that were not preserved for appeal by a specific objection at trial." *State v. Morey,* 722 A.2d 1185, 1188 (R.I. 1999) (quoting *State v. Pineda,* 712 A.2d 858 861 (R.I.1998)). The objection must be "sufficiently focused so as to call the trial justice's attention to the basis for said objection." *Morey,* 722 A.2d at 1188 (quoting *State v. Toole,* 640 A.2d 965, 972–73 (R.I.1994)). The record reveals that defense counsel did not timely object before the admission of testimony on the issue of sexual abuse. In a later objection, rather than challenging the admissibility of Nathaniel's hearsay testimony under G.L. 1956 § 14–1–69, defense counsel essentially asserted that the testimony should not be given much weight. Consequently, under these circumstances, the respondent waived his right to raise a defense to the

hearsay exception contained in G.L. § 14–1–69.

Even if the respondent had objected to Nathaniel's hearsay testimony in a timely and proper manner, the testimony was correctly admitted under the hearsay exception contained in G.L. § 14–1–69. In that testimony, there was sufficient evidence to base a finding of sexual abuse as to Nathaniel.

With respect to Tiffany's hearsay testimony at the second set of interviews, the respondent likewise, waived his right to challenge the testimony under G.L. § 14–1–69 for lack of a timely objection. The hearsay testimony of Tiffany was admitted, without objection, during direct examination. The hearsay testimony of Tiffany was admitted, without objection, during direct examination. It was only during cross examination that the respondent claims he became aware that Joyce was not the person who actually interviewed Tiffany. At that point, defense counsel objected to the testimony on the basis of hearsay. On appeal, the respondent asserts that the requirement that the statements must be made to someone the child would normally turn to for sympathy, protection, or advice was not met where the person who testified observed the interview through a one-way mirror. G.L. § 14–1–69.

However, the record belies the respondent's assertion that he had not been alerted to the fact that Joyce did not interview Tiffany at CAC. At the beginning of Joyce's testimony concerning Tiffany's statements, the state asked Joyce "[w]here you *present* for the interview at the Child Advocacy Center?" Before any testimony was adduced with respect to sexual abuse, Joyce stated "[t]he *person who took the interview* showed [Tiffany] pictures * * *." It should have been clear from these statements that Joyce did not inter-

view Tiffany and by failing to object in a timely manner, the hearsay testimony was properly admitted. Consequently, we need not address the issue of whether an observer of an interview through a one-way mirror fulfills the requirements set out in G.L. § 14–1–69.

For the foregoing reasons, the respondent's appeal is denied, the judgment of the Family Court is affirmed and the papers are remanded to the Family Court.