In re JARED S.

No. 2000–447–Appeal.

Supreme Court of Rhode Island.

Jan. 11, 2002.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Providence, for Plaintiff.

Paula Rosin, Providence, Frances K. Munro, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent parents appealed a judgment of the Family Court, terminating their parental rights to their son, Jared S., in this case that came before the Supreme Court for oral argument on December 5, 2001, following our order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. Having reviewed the record and the parties' briefs, and having considered the oral arguments, we are of the opinion that cause has not been shown. Therefore, we affirm the judgment of the Family Court.

In April 1998, the Rhode Island Department of Children, Youth and Families (DCYF) petitioned for termination of the parental rights of respondents, Carla Smith and Chester Jackson, III, to their first child, C.J. The Family Court determined that C.J. had undergone horrific abuse and terminated the respondents' parental rights, based on cruel and abusive conduct, under G.L.1956 § 15–7–7(a)(2)(ii). The termination of respondents' rights to C.J. was upheld by this Court in *In re*

*Chester J.,* 754 A.2d 772 (R.I.2000) (per curiam). Because of this prior finding of cruel and abusive treatment, DCYF took custody of the respondents' second child, Jared S., at birth. Although it arranged visitation for both parents, DCYF declined to offer respondents any case plans or parenting services. An adjudication of neglect by clear and convincing evidence was entered, and Jared was committed to the care, custody, and control of DCYF. After a hearing on DCYF's petition for termination, the Family Court terminated respondents' parental rights, in accordance with § 15–7–7(a)(2)(ii) and (iv), which provide that parental rights may be terminated if the court finds by clear and convincing evidence that the parents are unfit by reason of:

"(ii) Conduct toward any child of a cruel or abusive nature; [or]

" * * *

"(iv) The child has been placed with [DCYF] and the court has previously involuntarily terminated parental rights to another child of the parent and the parent continues to lack the ability or willingness to respond to services which would rehabilitate the parent; and provided, that the court finds it is improbable that an additional period of services would result in reunification within a reasonable period of time considering the child's age and the need for a permanent home." *Id.*

■ We review a termination of parental rights by determining whether legally competent evidence in the record supports the Family Court's findings, and we give great weight to the court's findings of fact. *In re Kelly S.,* 715 A.2d 1283, 1288 (R.I.1998). We shall not disturb those findings unless the trial justice was clearly wrong or unless the justice overlooked or misconceived material evidence. *Id.* In light of this standard, we defer to the Family Court's finding that respondents had not altered their attitude or lifestyle sufficiently to be considered fit parents, despite respondent mother's attending counseling while her insurance paid for it, and despite respondent father's participation in the YouthBuild job training program.

■ The respondent mother contended that her rights to raise her children should not be contingent on her being able to afford counseling in the absence of DCYF assistance. We reject this argument. The respondents' financial status was not the cause of the termination of their parental rights to Jared. Rather, their cruel and abusive treatment of their first child, coupled with their lack of remorse and their refusal to accept responsibility for his abuse caused the termination. The Family Court's capacity to terminate respondents' parental rights based on these factors was upheld by this Court in *In re Kelly S.,* wherein we noted, " '[t]he state, under the scrutiny of the court, need not wait until a child's life has been permanently and irretrievably impaired before acting.' " *In re Kelly S.,* 715 A.2d at 1289 (quoting *In re Lester,* 417 A.2d 877, 881 (R.I.1980)).

■ Moreover, neither the General Laws nor our Constitution requires that DCYF undertake extraordinary measures to reform unfit parents. Section 15–7–7(b)(1) provides, "In the event that a petition is filed pursuant to subsection (a)(2)(ii) [or] (a)(2)(iv), * * * [DCYF] has no obligation to engage in reasonable efforts to preserve and reunify a family." In accordance with this provision, we hold that DCYF is entitled to make the determina-

tion that its services would not be effective or it may decline to offer such services for parents adjudged unfit by reason of cruel and abusive conduct toward a child previously removed by involuntary termination. *Cf. In re Nicole B.*, 703 A.2d 612, 617–18 (R.I.1997) (holding that reasonable efforts to reunify parent and child are not required when the parent has engaged in conduct of a cruel and abusive nature toward that child, and noting that, "it is, at best, doubtful whether DCYF had any further obligation to expend *any* effort toward the reunification of respondents and their remaining children").

■ Finally, because the respondents did not provide any portion of the transcript of the hearing in Family Court addressing DCYF's obligation to provide services, the issue was not properly preserved and apparently was raised for the first time on appeal. *See State v. Pacheco*, 763 A.2d 971, 976 (R.I.2001); *see also In re Nathaniel M.*, 735 A.2d 226, 227 (R.I.1999) (mem.).

For these reasons, we summarily deny and dismiss the respondents' appeal and affirm the judgment of the Family Court, to which we return the papers in this case.